IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT A. EATON,<br><br>                    Plaintiffs,<br><br>vs.<br><br>MONTANA SILVERSMITHS,<br><br>                    Defendant. | CV 18-65-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Pro se Plaintiff Robert A. Eaton brings this action alleging generally that Defendant Montana Silversmiths discriminated against him, maintained a hostile work environment, and wrongfully terminated his employment.  (Doc. 12.) Montana Silversmiths has moved to dismiss all claims asserted in Eaton's Second Amended Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  (Doc. 16.)  For the following reasons, the Court recommends the motion be **GRANTED** in part and **DENIED** in part.

## I.    Background

According to his complaint, Eaton worked at Montana Silversmiths in Columbus, Montana until he was laid off on June 15, 2017.  (Doc. 12 at 2-3.)  Prior to being laid off, Montana Silversmiths employed a man in his early twenties to train for Eaton's job between August of 2016 and January of 2017.  *Id.* at 1.

1

On January 24, 2017, Eaton raised concerns with a director of the company regarding his supervisor's alleged sexual and racial harassment. *Id.* Thereafter, Montana Silversmiths' vice president insisted Eaton change his work hours, making it difficult for Eaton to pick up his children from school. *Id.* at 2. On April 4, 2017, Eaton's supervisor gave him subpar ratings on his yearly evaluation. *Id.* The following day, Eaton attended a meeting with his supervisor and Montana Silversmiths' vice president. *Id.* Eaton was sent home at the end of the meeting. *Id.* Eaton wrote a grievance letter to the company regarding this incident. *Id.*

On April 10, 2017, Eaton returned to work. *Id.* Four days later, however, Eaton underwent surgery for a work-related injury. *Id.* In May and June of 2017, Eaton communicated with Montana Silversmiths' human resources department regarding his grievance letter. *Id.* But on June 15, 2017, Montana Silversmiths' called Eaton to inform him he was being laid off.

## II.    Legal Standard

### A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the action. As the party asserting jurisdiction, the plaintiff bears the burden of proving its existence. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008.)

A defendant may pursue a Rule 12(b)(1) motion to dismiss either as a facial challenge to the jurisdictional allegations of a pleading, or as a substantive challenge to the facts underlying those allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039 (9th Cir. 2003). A facial challenge contests whether the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The challenge does not involve resolution of factual disputes; it only concerns the allegations in the complaint. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Therefore, the court must assume the allegations in the complaint are true and "draw all reasonable inferences in [plaintiff's] favor." *Id.*

## B.     Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).

Because Eaton is a pro se plaintiff, the Court must construe his complaint liberally, and the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pro se litigants must adhere to the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

## III.   Discussion

Eaton's Second Amended Complaint alleges six counts against Montana Silversmiths: retaliation (Count 1); wrongful termination (Count 2); disability discrimination (Count 3); age discrimination (Count 4); hostile work environment

(Count 5); and defamation of character (Count 6).  (Doc. 12.)  Eaton does not specify any particular statute, act, or constitutional provisions he relies upon for the basis of his claims.

Montana Silversmiths moves to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted.  Montana Silversmiths argues Eaton's complaint fails to establish subject matter jurisdiction because his complaint fails to state federal question jurisdiction, and diversity jurisdiction does not exist because Eaton alleges both parties are citizens of Montana.  (Doc. 17 at 3.)  Montana Silversmiths also argues Eaton's complaint fails to state a plausible claim for relief.  *Id.* at 4.

As the party asserting federal diversity jurisdiction, Eaton bears the burden of pleading and proving its existence.  *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016).  Diversity jurisdiction exists where the action is between citizens of different states and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  "The essential elements of diversity jurisdiction, including the diverse residence of all parties, must be affirmatively alleged in the pleadings."  *Bautista v. Pan American World Airlines, Inc.*, 828 F.2d 546, 552 (9th Cir. 1987) (quoting *In re Mexico City Aircrash*, 708 F.2d 400, 404 n. 4 (9th Cir. 1983)).  Eaton's complaint must therefore plead and establish he and Montana

Silversmiths are citizens of different states and the matter in controversy exceeds $75,000.[1]

Eaton alleges that Montana Silversmiths is a corporation.  (Doc. 12 at ¶ 2.) A corporation is a citizen of the state under whose laws it is incorporated, and a citizen of the state of its "principal place of business."  28 U.S.C. § 1332(c)(1); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009).  Eaton fails to allege facts establishing where Montana Silversmiths is incorporated, and whether its principal place of business is in Montana or another state.  Rather, Eaton's complaint alleges he and Montana Silversmiths are residents of Montana. (Doc. 12 at 1.)  When uncertainty as to jurisdictional existence arises, any doubt is normally resolved against a finding of such jurisdiction.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).  Thus, Eaton's complaint fails to plead the diverse citizenship required to invoke this Court's diversity jurisdiction.

Because this court does not have diversity jurisdiction over this matter, it can only consider Eaton's claims if they invoke federal question or supplemental jurisdiction.  Federal question jurisdiction lies in actions "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

---

[1] Eaton's complaint seeks compensatory damages in the amount of $121,000. (Doc. 12 at 5.)  Therefore, the Court finds Eaton has adequately pled the amount in controversy element of diversity jurisdiction.

Supplemental jurisdiction is permitted by 28 U.S.C. § 1367(a), which provides "in any civil action of which district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ."   Therefore, each of Eaton's claims will be addressed to determine whether the Court has either federal question or supplemental jurisdiction.

### 1.  Count 1 – Retaliation

Eaton's Second Amended Complaint is devoid of specific reference to Title VII of the Civil Rights Act.  Construing Count 1 of his complaint liberally, however, the Court can infer that Eaton is alleging he was terminated from his employment in retaliation for reporting sexual and racial harassment.

Title VII makes it unlawful for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  Title VII also prohibits an employer from retaliating against an employee who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a); *See also*, *Lyons v. England*, 307 F.3d 1092, 1103 (9th Cir. 2002).

To establish a prima facie case of retaliation, Eaton must establish that: (1) he engaged in a protected activity; (2) his employer took an adverse employment action; and (3) a causal connection existed between the first two elements. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). A protected activity includes opposing "any practice made an unlawful employment practice under [Title VII]."  42 U.S.C. § 2000e-3(a).  The Ninth Circuit has recognized that an employee's complaint regarding the treatment of others in his workplace is considered a protected activity under Title VII.  *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000).

Eaton's complaint alleges he reported "observing sexual and racial harassment with women and Latinos" to a director of Montana Silversmiths.  (Doc. 12 at ¶ 4.)  He further alleges he was subsequently subjected to a change in his work hours (*Id.* at ¶ 5); he received subpar performance ratings (*Id.* at ¶ 6); and he was ultimately laid off (*Id.* at ¶ 15).  Additionally, he alleges these actions were taken against him because of his report of discriminatory conduct to the company's director.  (*Id.* at 3.)  Therefore, Eaton has alleged sufficient facts to support a cognizable federal claim for retaliation under Title VII in Count 1 of his Second Amended Complaint.  This Court has federal question jurisdiction under 28 U.S.C. § 1331.  Montana Silversmith's motion to dismiss Count 1 under Fed. R. Civ. P. 12(b)(1) & (6) should be denied.

## 2.  Count II – Wrongful Termination

Count 2 of Eaton's complaint alleges wrongful termination.  Although he does not state the legal basis for his claim, the Court may infer that Eaton is alleging a claim under Montana's Wrongful Discharge from Employment Act ("WDEA").  Because a claim under the WDEA is a state cause of action, however, the Court can only assume subject matter jurisdiction over the claim under supplemental or diversity jurisdiction.  The Court has already found Eaton failed to sufficiently allege diversity jurisdiction.  But the Court has determined that it has jurisdiction of Eaton's claim in Count 1 of his complaint under Title VII. Therefore, the Court may exercise supplemental jurisdiction "over all other claims that are so related" to Eaton's Title VII retaliation claim "that they form part of the same case or controversy. . . ."  28 U.S.C. § 1367(a).

To state a claim for wrongful discharge under the WDEA, Eaton must allege that (1) he was an employee of Montana Silversmiths; (2) he was discharged within the meaning of the WDEA; and (3) the discharge was wrongful.  *Kestell v. Heritage Health Care Corp.*, 858 P.2d 3, 6 (Mont. 1993).

 "Employee" is defined under the WDEA as "a person who works for another for hire.  The term does not include a person who is an independent contractor."  Mont. Code Ann. § 39-2-903(3).  "Discharge" includes constructive discharge "and any other termination of employment, including resignation,

elimination of job, layoff for lack of work, failure to recall or rehire, and any other

cutback in the number of employees for a legitimate business reason."  § 39-2-

903(2).  The WDEA states that a discharge is wrongful only if:

> (a)  it was in retaliation for the employee's refusal to violate public
> policy or for reporting a violation of public policy;
>
> (b)  the discharge was not for good cause and the employee had
> completed the employer's probationary period of employment;
> or
>
> (c)  the employer violated the express provisions of its own written
> personnel policy.

Mont. Code Ann. § 39-2-904.

Good cause means "reasonable job-related grounds for dismissal based on a

failure to satisfactorily perform job duties, disruption of the employer's operation,

or other legitimate business reason."  § 3-9-2-903(5).  A pretextual reason for

discharge will not suffice.  *Moe v. Butte-Silver Bow Cty.*, 371 P.3d 415, 426 (Mont.

2016).

The allegations specific to Eaton's wrongful discharge claim only state

"[t]here were pretextual measures taken that transpired into wrongful termination."

(Doc. 12 at 3.)  Nevertheless, the Second Amended Complaint should be read as a

whole.  See *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)

("complaint should be read as a whole, not parsed piece by piece to determine

whether each allegation, in isolation, is plausible"); *Vila v. Inter–Am. Inv. Corp.*, 570 F.3d 274, 285 (D.C. Cir. 2009) (factual allegations should be viewed in their totality).  Considering all of the facts alleged in the complaint, it may be inferred that Eaton states a plausible claim under § 39-2-90 (1)(b) by alleging he was employed by Montana Silversmiths; he was discharged; and the reasons provided for his discharge were pretextual.  Additionally, Eaton more specifically states a plausible claim under § 39-2-904(1)(a) by alleging that he reported sexual and racial harassment, and he was ultimately terminated in retaliation for reporting a public policy violation.

Moreover, Eaton's claims under the WDEA and Title VII are based on the same facts.  They are thus very closely related, and they would plainly form part of the same case or controversy.  Therefore, the Court may exercise supplemental jurisdiction over Eaton's WDEA claim.  Montana Silversmiths' motion to dismiss Count 2 of the Second Amended Complaint should be denied accordingly.

### 3.  Count 3 – Disability Discrimination

Count 3 of Eaton's Second Amended Complaint alleges "disability discrimination."  While the basis for his disability discrimination claim is not specified, the Court could infer Eaton is alleging a claim under Title I of the American with Disabilities Act ("ADA").  The ADA prohibits discrimination against individuals with disabilities in employment.  *See* 42 U.S.C. § 12101 et seq.

11

Specifically, § 12112(a) of the ADA provides that an employer shall not discriminate "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

To establish a prima facie case for a violation of § 12112(a), Eaton must show that (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual, meaning he can perform the essential functions of his job; and (3) Montana Silversmiths terminated him because of his disability.  *EEOC v. BNSF Railway Co.*, 902 F.3d 916, 922 (9th Cir. 2018); *See also*, *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999).  Regarding the first element, the ADA defines disability to include "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).  As to the second element, the ADA defines a "qualified individual" as someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

Eaton fails to allege any facts to establish a plausible claim under the ADA. First, his allegation that he "underwent surgery for a work-related injury" is

insufficient to meet the ADA's definition of disability.  He has not alleged he has an impairment which substantially limits a major life activity.  Additionally, Eaton's complaint is devoid of any facts demonstrating he is a "qualified individual" within the meaning of the ADA.  He has not stated any facts demonstrating he can perform the essential functions of his job.  Finally, it is unclear whether Eaton is alleging he was laid off because of a disability.  Therefore, Eaton also fails to allege facts to reasonably infer the third element necessary to establish a prima facie case under the ADA.

The Court could also infer that Eaton is attempting to state a claim under the Family and Medical Leave Act ("FMLA") based on the denial of his right to return to his job after taking medical leave for surgery.  (Doc. 12 at 3.)  "The FMLA provides job security to employees who must be absent from work because of their own illnesses . . . ."  *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1119 (9th Cir. 2001); *See also*, 29 U.S.C. § 2601.  The Act "creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave."  *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011).  Therefore, a plaintiff alleging a FMLA violation can proceed under two theories: the discrimination/retaliation theory, or the entitlement/interference theory.  *Id*.  The

13

Ninth Circuit has found that a claim of entitlement/interference under FMLA includes "an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions[.]" *Bachelder*, 259 F.3d at 1122 (citing 29 C.F.R. § 825.220(c) "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . . .").

To make out a prima facie case of FMLA entitlement/interference, Eaton must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (internal quotations omitted). Here, Eaton's allegations do not state any facts to reasonably infer that any of these elements have been met. At most, Eaton's complaint alleges he was laid off because he underwent surgery. (Doc. 12 at 3.) Thus, the Court cannot find he has sufficiently alleged a plausible FMLA claim.

Having concluded that Eaton has failed to state a plausible federal claim under either the ADA or the FMLA, the Court recommends his claim in Count 3 be dismissed.

/ / /

14

### 4.   Count 4 - Age Discrimination

Eaton's complaint does not contain any specific reference to the Age
Discrimination in Employment Act ("ADEA").  Construing Count 4 of his
complaint liberally, however, the Court can infer that Eaton is alleging his
employer laid him off because of his age.  (Doc. 12 at 4.)

The ADEA prohibits age discrimination against individuals in any aspect of
their employment.  29 U.S.C. § 623.  To establish a prima facie case for age-based
discrimination, Eaton must show that he was "(1) at least forty years old, (2)
performing his job satisfactorily, (3) discharged, and (4) either replaced by
substantially younger employees with equal or inferior qualifications or discharged
under circumstances otherwise giving rise to an inference of age discrimination."
*Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008)
(internal quotations omitted).  "An inference of discrimination can be established
by showing the employer had a continuing need for the employees' skills and
services in that their various duties were still being performed[.]"  *Diaz*, 521 F.3d
at 1208 (internal quotations omitted).

While Eaton has alleged that he was laid-off, thus satisfying the third
requirement, he has not alleged any facts to plausibly establish a claim for relief
with respect to the remaining elements.  He has not alleged he was over forty-
years-old, nor has he alleged any facts to establish he was performing his job

satisfactorily.  In addition, while he does state that a "younger person was brought into the office to train for Plaintiff's job just months before he was laid off," he does not allege that he was, in fact, replaced by a younger person with equal or inferior qualifications, or other facts giving rise to an inference of age discrimination.   The Court therefore recommends Eaton's age discrimination claim in Count 4 of his Second Amended Complaint be dismissed.

### 5.  Count 5 – Hostile Work Environment

Title VII's prohibition against unlawful discrimination "encompasses the creation of a hostile work environment, which violates Title VII's guarantee of 'the right to work in an environment free of discriminatory intimidation, ridicule, and insult.'"  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).  "To establish a prima facie case, [Eaton] must be able to show that, [1] because of [his] race or sex, [2] [he] was subjected to unwelcome conduct that was [3] 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'"  *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1016–17 (9th Cir. 2018) (quoting *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017)).

The Ninth Circuit has also recognized that "[a] plaintiff, though not within a protected class, may satisfy the first prong of this test based on [his] association

with or advocacy on behalf of protected employees." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (9th Cir. 2009). The second element requires the conduct be "objectively and subjectively offensive" such that "a reasonable person would find hostile or abusive," and that "the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998). The third element requires the conduct to be more than offensive and inappropriate; it must "so pollute the workplace that it altered the conditions of [Eaton's] employment." *Manatt v. Bank of America, NA*, 339 F.3d 792, 798 (9th Cir. 2003) (citing cases finding no hostile work environment where supervisor referred to females as "castrating bitches" or where employee was told he should work in the field because he was Hispanic).

Eaton alleges he endured "offensive language" of a sexual and derogatory nature "towards and about women in the facility as well as visitors." (Doc. 12 at 4.) He also alleges his supervisor "would verbalize racial slang," and made indirect threats of how he was going to get rid of Eaton. *Id.* He alleges this made it "difficult to work." *Id.*

The Court finds that Eaton has failed to allege facts to state a plausible claim for hostile work environment. He has not alleged that he was subjected to a hostile work environment because of his gender or race, or because he associated with or advocated on behalf of other protected employees. He also does not allege facts from which it could be reasonably inferred that the conduct was sufficiently severe

17

to alter the conditions of his employment.  His vague reference to offensive sexual and derogatory language is not sufficient to state a plausible claim for hostile work environment.  Therefore, the Court recommends Count 5 of Eaton's Second Amended Complaint be dismissed.

### 6.  Count 6 - Defamation of Character

Count six of Eaton's Second Amended Complaint alleges defamation of character without identifying what law Montana Silversmiths violated.  Eaton presumably is alleging the tort of defamation, which occurs through libel or slander under Montana law.  Mont. Code Ann. § 27-1-801.  Defamation is a state cause of action.  As with Eaton's wrongful discharge claim, the Court can only assume subject matter jurisdiction over Eaton's defamation claim under supplemental jurisdiction.  But the Court does not need to determine whether it is appropriate to exercise supplemental jurisdiction over the claim, since it is subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

"Defamation is effected by libel or slander."  *Chapman v. Maxwell*, 322 P.3d 1029, 1032 (Mont. 2014) (citing *McLeod v. State*, 206 P.3d 956, 960 (Mont. 2009)).  "Slanderous words are spoken, whereas libelous words are written." *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1382 (Mont. 1989).  "[T]he threshold test is whether the statements, even if false, are capable of bearing a defamatory meaning."  *McConkey v. Flathead Electric Co-op*, 125 P.3d 1121,

1130 (Mont. 2005).  The test is stringent.  *Id.*  The words "must be of such a nature that . . . they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided."  *Id.* at 1130 (citing *Wainman v. Bowler*, 576 P.2d 268, 271 (Mont. 1978)).  Sarcastic words, hyperbolic statements, and expressions of opinion do not rise to the level of defamation.  *McConkey*, 125 P.3d at 1130.

Here, Eaton's complaint fails to identify any allegedly defamatory statements.  The most Eaton alleges is that his superiors mocked him and twisted his words.  (Doc. 12 at 4-5.)  But the complaint does not sufficiently identify what was allegedly said and when.  The complaint generally alleges the Montana Silversmiths' vice president twisted his words "3 months later, after a HRB investigation[.]"  *Id.*  These allegations do not identify specific statements, nor do they specifically identify when any such statements were made.  The allegations do not allow the Court to determine whether it is plausible that the words would disgrace or degrade Eaton, or cause him to be shunned or avoided.  The allegations therefore do not satisfy the stringent standard for defamation.  Count 6 of Eaton's Second Amended Complaint should be dismissed accordingly.

/ / /

/ / /

/ / /

/ / /

/ / /

19

## IV.   Leave to Amend

If a Rule 12 motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend.  "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Eaton has failed to state a claim upon which relief can be granted in Counts 3 through 6 of his Second Amended Complaint, and those counts are subject to dismissal.  Because it may be possible to cure these defects by alleging additional facts, however, Montana Silversmiths' motion should be granted without prejudice and with leave to amend.

## V.   Conclusion

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Montana Silversmiths' Motion to Dismiss (Doc. 16) be **DENIED** as to Counts 1 and 2, and **GRANTED** as to Counts 3 through 6.  Dismissal should be without prejudice and with leave to amend.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.

**IT IS ORDERED**.

DATED this 12th day of July, 2019.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge