# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

**FILED**

JAN 10 2020

Clerk, U.S. Courts
District Of Montana
Billings Division

| | | |
|---|---|---|
| ROBERT A. EATON, | ] | CV18-65-BLG-SPW-TJC |
| Plaintiffs, | ] | **JURY TRIAL DEMANDED** |
| Vs. | ] | |
| MONTANA SILVERSMITHS, | ] | |
| Defendant. | ] | |

---

## AMENDED COMPLAINT (#4) WITH JURY DEMAND

---

According to "Scheduling Order" Document 43,  Comes the Plaintiff, Robert A. Eaton for his fourth amended complaint against the Defendant, Montana Silversmiths -amending this complaint to add Breach of Contract:

## **PARTIES**

1. Plaintiff, is a resident of Carbon County, Montana, and is a male over the age of forty, is a metalsmithing designer and artist with a bachelor of fine arts in this area, and was a metal engraver with promise to become a designer at Montana Silversmiths company in Columbus, Montana. Mr. Eaton was an employee at

Montana Silversmith's Company from March, 2013 until his dismissal on June 15, 2017. Individuals involved with dismissal process included, Justin Deacon, direct supervisor, Lance Nearby, VP, Collette Schlehuber, Human Resources, David Cruz, Justin Deacon's Director, and Steve Muellener, CEO.

### JURISDICTION AND VENUE

This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. and Age Discrimination in Employment Act of 1964 (ADEA), and the regulations governing federal employees, 29 C.F.R. §1614.407. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination.

Plaintiff, Robert A. Eaton, for his complaints against the defendant states and alleges: This is a complaint seeking declaratory, and injunctive, and monetary relief from descendants Montana silversmiths Plaintiff filed a complaint on July 7, 2017 with Montana Human Rights Bureau ("EEOC") alleging violations of thr Montana Human Rights Act (Title 49, Capter 2 MCA), the Americans with Disablitites Act (ADA), as amended, or the Age Discrimination in Employment Act (ADEA),     Title VII of the Civil

Rights Act of 1964, including violations of sex discrimination, age discrimination and Mr. Eaton reporting observed harassment by direct supervisor, Justin Deacon toward women in the facility sexually and racially, when it terminated his employment. On July 7th, 2017, Mr. Eaton Filed His first Notice of Retaliation with the Montana Human Rights Bureau, EEOC.  Mr. Eaton received a Notice of Final Agency Decision, Dated January 23, 2018, from Montana Human Rights Bureau with issuance of Notice of Dismissal and Notice of Right to Sue. In the agency decision final investigative report, it was noted that the timeline from the third party grievance completion and lay off were a day apart. Additionally, it was noted that omissions to the report and investigation were all of Mr. Eaton's witnesses. All of Montana Silversmiths witnesses were directly interviewed. Finally, in the overview, MHRB contents that Montana Silversmith stated they had a restructuring, but MHRB stated in their investigation that the lay of plan was "*exceedingly vague and undated and apparently subject to revision*". Additionally, Mr. Eaton received a Dismissal and Notice of Right to sue based on Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act or the Ace Discrimination Employement Act on March 14th, 2018, reporting Mr. EAton may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.

Plaintiff Robert Eaton brings forth the following causes of action and alleges the following:

## GENERAL FACTUAL ALLEGATIONS

Mr. Eaton is currently a 45 year old male, who retained a bachelor's degree in Metalsmithing, and prior to his employment with Montana Silversmiths, had 16 years of experience as an independent artist, completing metal mediums piece in a variety of forms with a variety of techniques.  Montana Silversmiths' VP at the time of Mr. Eaton's hiring, Kevin Johnson, had told Mr. Eaton that he was hired secondary to  his talent and his knowledge( David Cruz had also stated this to Mr. Eaton at a later date, about one month before Mr. Eaton went on leave for his work related injury surgery-Mr. Cruz was stating this when Mr. Eaton asked why they had brought in Andrew to train for engraving).  Mr. Eaton had been sent to 3-4 departments when he began working for Silversmith's and proved his knowledge, exceeding in all areas of metalsmithing work.

1.    Plaintiff is an individual and resident of Roberts, Montana

2.    Defendant is a corporation and at the time of this complaint, a resident of Columbus, Montana.

3.    On or about August, 2016 through February 2017, a young male in his early 20s was brought into Plaintiff's office to train to do the work he did.

4.    On or about 01/24/17 Plaintiff brought about concerns with a director in the Company about issues with his direct supervisor, which included concerns of observing sexual and racial harassment with women and Latinos in the company.  This director stated he would discuss these concerns with The VP of the company.(These issues were brought up in 2016 as well, with minimal change).

Case 1:18-cv-00065-SPW-TJC  Document ---  Filed 01/10/20    5

5.    On or about 01/25/17, the VP approached plaintiff insisting he change his hours to different times, which would make it difficult for plaintiff to pick up children from school.

6.    On or about 04/04/17, plaintiff's direct supervisor provided subpar ratings of yearly evaluation with comments that did not match the markings- one comment on plaintiff not getting along with the supervisor's son.

7.    On or about 04/05/17 Plaintiff was taken to a meeting with direct supervisor and VP of company, where he was sent home without good reason.This was after Mr. Neirby and Deacon changed the performance evaluation to "not getting along with his supervisor", because Mr. Eaton brought up his concerns about sexual harassment noted with his supervisor during this meeting.

8.    On or about 04/05/17 Plaintiff wrote a grievance letter to company for sending him home without good reason.

9.    On or about 04/10/17 Plaintiff returned to work without any verbal reasoning of being sent home.

10.   Mr. Eaton was given a computer when Mr. Eaton first began work with Montana Silversmiths in December, 2013 (Exhibit 8).  They later took the computer away without training Mr. Eaton and brought Travis Deacon, a younger and newer employee, to the computers in the design room and trained him. On or about 4/13/17, Montana Silversmiths VP, Lance Neirby, spoke with plaintiff, telling him that they would be able to

get a computer for him and get him started with design once he returned to work after his surgery, about 4/30/17.

10.   On or about 04/14/17, Plaintiff underwent surgery for work related injury.

11.   On or about 05/15/17, Plaintiff received a letter from HR at Montana Silversmiths stating they would undergo a third-party investigation for grievance letter.

12.   On or about 06/09/17, Plaintiff received response to grievance letter.

13.   On or about 06/12/17, Plaintiff wrote an appeal letter to Montana Silversmiths regarding their response to the grievance letter.

14.   On or about 06/14/17 Montana Silversmiths HR wrote an appeal letter stated they have no mechanism for grievance appeal.

15.   On or about 06/15/17, Montana Silversmiths HR and VP made a phone call to plaintiff, laying him off.

Plaintiff brings forth the following allegations supporting counts and allegations supporting his cause of action:

1.   Plaintiff was an employee over the age of 40 and protected by civil right laws referenced herein.

2.   At the time of his termination of employment, Plaintiff was qualified for the position her held, as well as a majority of positions at the facility. He had proven his ability to design with a design contest brought on by his supervisor's

supervisor, David Cruz, a couple weeks before his performance evaluation and worker's compensation surgery, winning the contest. Additionally, Eaton was given a design project by Cruz, which was cut off or cancelled by Mr. Deacon.

3. Plaintiff was involuntarily denied employment opportunities, promotion opportunities, and was untimely terminated from employment from defendants.

## COUNT 1.-RETALIATION

Defendant demonstrated retaliation against the Plaintiff for bringing forth concerns in the company, which were initially denied; however, there were noted inconsistencies in documented evaluations in the third-party investigation as well as the documented Human Rights Bureau investigations- Notes of retaliation included:

· Attempting to change a schedule already agreed upon to allow plaintiff to pick up children from school/babysitter.

· Providing low marks on yearly evaluation without cause/reason, which included changing plaintiff's comments on his evaluation when plaintiff confronted VP and supervisor, stating information was untrue, but not changing his low marks. Comments on the yearly evaluation were positive and not correlating with low marks written.

· Retaliated by laying plaintiff off after being on workman's comp for injury incurred at work.

·      Retaliated because of plaintiff bringing up concerns about observance of sexual/racial harassment.

## Count 2.  WRONGFUL TERMINATION

There were pretextual measures taken that transpired into wrongful termination.

**wrongful termination**, was provided by pretextual measures. This was noted by the causes of action on the first page of the 2nd amended complaint which states that after plaintiff complained about observing sexual and racial harassment by his supervisor with other individuals, he received subpar ratings on his yearly evaluation, with comments that did not match the marking.  One comment on the plaintiff was not getting along with the supervisor's son.  Please note that there were two performance evaluations. When Mr. Eaton confronted his supervisor and the VP, they changed the complaint to" not getting along with his supervisor", when the VP forced Mr. Eaton to talk about his concerns with sexual and racial harassment in front of his supervisor. They then changed the comment on his evaluation to "not getting along with his supervisor". The supervisor and VP bullied Mr. Eaton in their stance to get him to say, do something to get him to respond in some negative way. After mocking and using body language to push him, repeating, "what are going to do then, what are you going to do then?".  Mr. Eaton responded with, "You guys act like I am going to bring a bomb, that IS NOT what I'm saying, I am saying I am going to have to get a lawyer".  AT this point, they had gotten what they wanted and sent Mr. Eaton home.  He came back to work 3 days later for a week prior to a surgery he needed.  No one acted like they were

worried about him or that he had threatened them. In fact, the VP said to Mr. Eaton he hoped they could work this out.  but they tried to use this as a reason for disciplinary action 3 months later when Mr. Eaton had filed a suit with MHRB.  None of which was documented or sent to Mr. Eaton. They did use this as a reason for layoff, but this changed as this was debunked in the MHRB investigation to the main reason for his layoff being that he was not sufficiently cross trained. Please note that MHRB did state in their evaluation that Mt. Silversmiths did not have a written guideline or any noted guideline for their supposed 3 stage lay off, making it vague as to what they really were doing. Keep in mind, when initiating a lay-off, it is advisable to stick to one strategy. But their rationale for layoff was changed multiple times, including, disciplinary actions, to lack of flexibility, to changing focus to jewelry, to cost reduction, to the last reasoning of cross training and each administrative officer provided a different reasoning, without consensus between them. This is a red flag for the course of pretextual measures.

Additionally, VP approached Mr. Eaton on 1/25/17 and the VP insisted Mr. Eaton change his hours even though one of Mr. Eaton's stipulations to taking this Job was having these hours because he has five children and the company agreed to this. This was an implied contract.  Mr. Eaton was forced by the company in letters, stating he would have to quit if he did not change his hours.  Days before he was to return to work from recovery of his injury, Mr. Eaton complied with the changing of his hours.  This was an original rationale for his lay off that they changed throughout the MHRB investigation.

Case 1:18-cv-00065-SPW-TJC   Document ---   Filed 01/10/20        10

Please allow Exhibit 7, which shows that the HR person at Montana Silversmiths,

Collette Schlehuber withheld information during the investigations and changed her

response to whether or not Mr. Eaton had come to her complaining of observed sexual

harassment by his supervisor. Mr. Eaton does have hand written (typed per request)

notes-will provide upon request,  which detail all events throughout the time he spent at

Mt. Silversmiths.  This shows pretextual measures that led to a wrongful termination.

## COUNT 3-- DISABILITY DISCRIMINATION

Please allow Mr. Eaton to clarify that he is alleging a claim under Title 1 of the American

with Disabilities Act ("ADA").  Mr. Eaton had a back injury prior to beginning work at

Montana Silversmiths.  Collette Shruber, HR, and the original VP were also aware of

this disability.  Mr.

Eaton was not given more than two 15 minutes breaks in an 11 hour day.


 Additionally, Mr. Eaton accrued bilateral epicondylitis and carpal tunnel syndrome from

repetitive work at Montana Silversmiths, with symptoms beginning in August, 2015.   Mr.

Eaton's first report dated 08/19/2015 (please refer to Montana Statefund First report),

describes his occupation as hand engraver.  Description of event included "Employee

reports that he is experiencing pain in both of his wrists and elbows as well as

numbness in both hands due to repetitive job tasks he performs as a hand engraver"

    a.    Mr. Eaton was found by Worker's Compensation physician, Dr. Bellville (report dated 12/03/2015) to have possible right lateral epicondylitis.

        i.    Mr. Eaton complained of pain with internal rotation at the elbow-from the wrist to the elbow bilaterally. This was the movement pattern completed continuously at work with 60+ pounds of pressure for 11-12-hour shifts. He demonstrated this movement pattern to several physicians.   Dr. Smith decided an MRI would be warranted to assess this because it is not the movement pattern with lateral or medial epicondylitis, thus these informal assessment measures were not accurately assessing the described injury.

        ii.    Mr. Eaton described bilateral wrist and elbow pain with Dr. Whitehead in the original patient description of problem, it was in the first report, Guy Schmidt, orthopedic MD diagnosed "paresthesia and pain further up in the forearm"- with a request for further work up.

    b.    Dr. Bellville reported a need for Mr. Eaton to have altered work conditions ( report date 12/3/15) secondary to his significant hand/wrist-carpal tunnel issues and suspected epicondylitis as well as rehabilitation for this in Columbus, Montana- the town where Mr. Eaton worked.  None of this information was relayed to Mr. Eaton and none of these arrangements were made by-between Worker's Compensation and

Montana Silversmiths.  This lack of follow through may have significantly impacted the severity of Mr. Eaton's condition pre- and post-surgery.

Therefore, secondary to Montana Silversmiths not following through with accomodations Mr. Eaton needed because of his work related issues, Mr. Eaton's symptoms worsened and this shows .  Additionally, Collette Schlehuber, HR, was aware that Mr. Eaton was going to have to have multiple surgeries because his injury with both hands. The physician would not complete any of the surgeries at the same time.  The above would increase Mr. Eaton's risk of being discriminated against because of the disability factor.

In Mrs. Schlehuber's June 9, 2017 letter to Mr. Eaton, he was informed that as soon as he received medical clearance to do so, he should return to work".  Disability discrimination was shown when Mr. Eaton called Collette, HR, on JUNE 1, 2017- Collette would not allow Mr. Eaton to go back to work, even though he had a verbal okay from his doctor, just to call and he would release Robert back to work. Collette stated that his work injury and this case played hand in hand with the investigation to see how they wanted to proceed. Robert called Sandra at the Associated Employee Group (third part investigators) - stating that he felt he was being retaliated against, since he was not being allowed back to work.  Sandra stated Robert was looking too far into it. Soon after, Mr. Eaton was laid off.

Prior to returning to work and lay off, as well as the adjusted accommodations and adjusted evaluation, Mr. Eaton had excelled in his area of work with prior supervisors

saying he exceeded expectations and abilities in his work as well as having a degree in the areas which he was working as a hand engraver, designer. Mr. EAton was performing his job and well even with his disabilities.

Thus, Mr. Eaton has two impairments which substantially limit major life activities. With accomodations, he would have been able to meet the needs of his employer, but was not given just accommodations or allowed to return to work.  Specifically, this shows § 12112 (a) of the ADA  which provides that an employer shall not discriminate "against a qualified individual on the basis of disability in  regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."


Given the above information, Mr. Eaton is able to establish a prima facie case for a violation of §  12112 (a) of the ADA secondary to showing that (1) he is disabled within the meaning of the ADA: (2) he is a qualified individual, meaning he could perform the essential functions of his job given accommodations; and (3) Montana Silversmiths terminated him, in part, because of his disability. *EEOC v. BNSF Railway Co.*, 902 F. 3d 916, 922 (9th Cir. 2018).


**COUNT 4- AGE DISCRIMINATION**

Please allow Mr. Eaton to clarify that he is alleging in Count 4, Age Discrimination in Employment Act ("ADEA"). Mr. Eaton is currently 45 years of age, being 43 years of age at time of his release from Montana Silversmiths.  At his time of lay off, Mr. Eaton was not provided a list of individuals and ages within his department. On 1/11/17, after Andrew, an employee in his 20s came to train as an engraver in to Mr. Eaton's department. David Cruz, Mr. Eaton's supervisor's boss, came into the department and asked Mr. Eaton how Andrew was doing.  The following is a replica of the account Mr. Eaton documented on that date: "*David came in and asked how Andrew was doing. I said it's not an easy thing to learn, but he seems to be working hard.  He said we have to make way for younger engravers.  He told me not to worry, that I was making way more hourly than them.  He said they would probably have to work 10 years to make what I make.  Justin also said "We're not going to be around forever".  He needed to train his son so he could take over.  (Both of these comments are age discrimination). Justin said Collett was trying to hire Andrew.*"

Additionally, Mr. Eaton was told that Travis Deacon, who was a teenager in high school when Mr. Eaton was hired, needed to work after hours.  Mr. Eaton was told that they wanted him to have longer hours to chaperone Travis in a sense because he was underaged.  Travis could not work until after school when most other employees were leaving for the day, so Mr. Eaton worked late until Travis graduated high school and wanted to work full time.  At that time, Mr. Eaton was told that he had to change his work hours and those hours he was hired for would no longer work.

Mr. Eaton feels the above information show a level of age discrimination and favoring of younger empoyees.  The following accounts in addition to Mr. Eaton's degree in metalsmithing as well as his prior evaluations and statements from his former supervisor, Curt Robins,   show Mr. Eaton's level of expertise and high performance level in his job.  Curt Robins, former supervisor, stated the following in a conversation to Mr. Eaton dated 8/29/17 (here is the typed information that is hand documented by Mr. Eaton of the phone conversation): "*Spoke to Curt Robins. He called and left a message that he had Kevin Johnson's phone number.  I called him back and we talked about MSS and the accusations they were accusing me of.  I asked if I could use him as a witness for my HR case.  He said yes.  I told him they were accusing me of not doing my job and missing deadlines.  He said my personality was to not say a lot, but to go right to work. He said I would always have my head down working, which was appreciated by management.  He wrote this in my yearly evaluations and so did Justin. (Hard worker, always on task. Upper management appreciating me.)  Curt could not believe what they were doing to me and said it.  I told him I was laid off after writing a grievance on sexual harassment. He said there were issues of this in the past that was covered up.  He told me Justin did a lot of things that he should of gotten fired for, but he didn't know what Justin had over them that they always let him off the hook.  He also said that they would need me to fulfill buckle orders, but they were probably just shipping more out to his brother.  He said he would back for my character.  He said he talked to Kevin on a regular basis so the phone number should work.  If I needed anything else to let him know.*"

Additionally, Travis Deacon, the youngest engraver, was given job training advances, representation as company engraver in Las Vegas.  This is without allowing the other engravers who had been there longer the chance to be involved.

Given the above information, Mr. Eaton is able to establish a prima facie case for age-based discriminations 29 U.S.C. §623.  Mr. Eaton, thus, is able to show that (1) he is at leat forty years old, (2) preforming his job satisfactorily, (3) discharged, and (4) discharged under circumstances otherwise giving rise to an inference of age discrimination with administration making inferences to the fact that they planned on hiring younger individuals to do his job.  *Daiz v. Eagle Produce Lt. Partnership*, 521 F. 3d 1201, 1207 (9th Cir. 2008).

**COUNT 5- HOSTILE WORK ENVIRONMENT**

Mr. Eaton is able to prove that he is indeed "[a] plaintiff, though not within a protected class, may satisfy the first prong of this test based on [his] association with or advocacy on behalf of protected employees." *Barrett v. Whirlpool Corp.*, 556 F. 3d 502, 515 (9th Cir. 2009).  Mr. Eaton is able to accomplish this by going to Mrs. Schlehuber, HR, Steve Muellner, CEO, David Cruz (Mr. Eaton's supervisor's boss), and Lance Neirby, VP about Mr. Eaton's concerns about his supervisor, Justin Deacon making remarks that were sexually harassing as well as racially harassment.  Specific accounts include the following:

1) Justin Deacon stating, "We don't need to hire a damn Mexican" ( in reference to his supervisor/director as well as another engraver Silversmiths was looking into hiring that was hispanic)

2) Telling co-worker Brian " I told you never to date a damn mexican woman"

3) Justin Deacon told all the engravers in Mr. Eaton's area (documented journal of Mr. Eaton's), "I'm gonna throw that Mexican over the table and beat him" (in reference to Mr. Deacon's supervisor David Cruz.

4) Justin stated, "I want to eat her out like a pork chop,"about a young girl he saw out the factory window.

5) Mr. Eaton witnessed Justin Deacon and his son, Travis, get in an argument, with Travis stating that his father pulled down his pants and flashed his son's girlfriend at a party.

6) Mr. Eaton witnessed Mr. Deacon touch another female employee's breast and grab at her until she slapped his hand away.

7) Mr. Eaton witnessed Mr. Deacon massage the shoulders of and pull down the shoulder of a shirt of another employee, Amy, to look at a tattoo. Mr. Eaton noticed a level of discomfort in the girl's face.

Mr. Eaton voiced his concern about sexual and racial harassment to HR several times without assistance to have Mr. Deacon stop his verbal and physical harassment with no change in Mr. Deacon's behaviors. This led Mr. Eaton to believe that the administration was not taking care of the situation. Mr. Eaton went to the HR, Colette, and stated that he would be going to the Montana Human Rights Bureau because he felt nobody was

taking him seriously. Mr. Eaton felt intimidated by Mr. Deacon's ability to manipulate his

job status because of his title of supervisor, making it difficult for Mr. Eaton to stand up

for those in protected classes, however, he still did. All the above provided an offensive

and hostile work environment, especially when Justin (Mr. Eaton's supervisor) made it

obvious to Mr. Eaton that he did not want Mr. Eaton there.  This was noted when Justin

Deacon slapped Mr. Eaton on the back and stated, "Looks Like your ally's leaving. Now

that we got rid of Kevin (former VP), all we need to do is get rid of the people he hired

(Mr. Eaton)". Justin also stated to Mr. Eaton, " I never wanted to hire any of you, it's like

cutting my son and my throat.".  Additionally,  Mr. Deacon would harass Mr. Eaton

verbally, stating that "Collette tells me everything."  Mr. Deacon would spit tobacco by

Mr. Eaton's desk.  Mr. Deacon would stand in an aggressive stance and slam doors,

glaring at Mr. Eaton.  Mr. Deacon used his position as Mr. Eaton's supervisor to give

him subpar marks on his yearly evaluation that were not in sync with his comments and

made up lies about Mr. Eaton not talking to his son during work hours, trying to find a

reason to  give him low marks on his evaluation.

Mr. Eaton had shown that he was performing his job in an exceptional manner via

having won a ring contest put on by David Cruz for all of the engravers just weeks

before the performance evaluation.  Additionally, Mr. Nearby, VP, had spoken with Mr.

Eaton a couple weeks before his surgery, and discussed how they were planning on

training Mr. Eaton in design because of his exceptional talents.

The plaintiff endured offensive language by a supervisor in a daily routine, which included strong sexual and derogatory language towards and about women in the facility as well as visitors.  Additionally, this supervisor would verbalize racial slang and threats indirectly to/about employees/administrators of a different race during work hours, making it difficult to work.  This same supervisor made indirect threats to plaintiff on how this supervisor was going to try to get rid of   the plaintiff.

**COUNT 6- DEFAMATION OF CHARACTER**

As stated in the 2nd amended complaint, the VP (Lance Nearby) twisted Mr. Eaton's words after 3 months (as stated earlier, they sent Mr. Eaton home, had him come back three days later, never documented or verbally stated that he had "threatened the company"), but in a verbal statement to MHRB 6 months later said that they felt threatened and that they had called the cops.  This statement was used in the January, 2017 summary from MHRB investigation summary. According to the MHRB investigative report dated January 8, 2018, Mr. Nearby had stated, "Mr. Eaton made a comment about a bomb" and called the cops. This shows the element of defamation, which Mr. Neirby made false comments to 3rd parties twice about his character, which affects Mr. Eaton's ability to find more work in a small community with these rumors. Given that Mr. Nearby stated this, and this was written in a summary by MHRB on January 8, 2018, this satisfies the ability to state a claim upon which relief can be granted for defamation as a state cause of action under Montana law referring to the Mont. Code Ann. §27-1-801.

False reporting and accusations of VP at Mt. Silversmiths. During a last meeting with

the plaintiff, his supervisor, and VP.  The supervisor and VP were harassing the plaintiff,

during a meeting when the plaintiff stated he was going to have to do something (about

how he was being treated and his observance of racial and sexual harassment).  The

VP and supervisor were mocking the plaintiff, saying, "what are you going to do," asking

over and over.  The plaintiff stated, "you guys act like I am bringing a bomb.  That is

NOT what I am saying, I am saying that I will have to get a lawyer". The VP twisted this

phrase 3 months later, after a HRB investigation, trying to use this against the plaintiff.

This was an attempt to use this as part of the rationale for the layoff.

**SUPPLEMENTAL PLEADING:**

   **1. Breach of Contract:**

 MCA 27-1-312 "The detriment caused by the breach of an obligation to pay

money is deemed to be the amount due by the terms of the obligation with

interest thereon". *Breach of an employment contract Wyatt v. School District*

*No. 104, Fergus County.*


*Williams v. Plum Creek Timber Co.,* 2011 MT 271.  A discharge is wrongful if

the jury finds the employer violated its own personnel policy.  AEG reported

in its final report that Montana Silversmiths did not follow its own personnel

policy with regards to "Nepotism, Employment of Relatives and Personal

Relationships", which allows question of their other policies.  There were

several sections in the employee handbook that were breached.  These include, but are not limited to **1)communication (pg. 20 MSS Employee Handbook)-"This encourages any employee to speak to their supervisor, manager, or human resource personnel at any time for any reason. "-**According to Defendant's counsel during the MHRB investigation was that Eaton overstepped the heirarchy when verbalizing his concerns in the company, thus downgrading his makrs on his performance evaluation.  However, these downmarks are in direct contrast to their communication contract in the employee handbook, thus breaching their own contract. **2) Use of Paid and Unpaid Leave(p.28 MSS Employee Handbook), "Disabiity leave for the birth of a child and for an employee's serious health condition, including worker's compensation leave (to the extent that it qualifies), will be designated as FMLA leave and will run concurrently with FMLA".-**When Eaton asked HR, Colette Schlehuber, about FMLA , he was told because this was worker's compensation, he did not qualify, and would not provide him with a certification form to fill out, or request FMLA.  Eaton asked 30 days before going on leave, as well as during leave when his PTO was running out. This shows that HR was not complying with their contract in the handbook, that shows that Eaton should have been allowed to at least submit an FMLA leave form request to assess whether he could obtain this in conjunction with Worker's Compensation; however, HR did not allow him this

right, by denying him the ability to apply for FMLA.  Thus, breaching this portion of their handbook "contract". Eaton was on Workers Compensation, not allowed FMLA, even with his need for extended leave.(***Evidence: Eaton documented going to Colette Schlehuber, HR)***

   ***3)Nepotism, Employment of Relatives, and Personal Relationships ( pg. 13 MSS Employment Handbook), which states, " Montana Silversmiths Inc. seeks to ensure that we avoid situations such as a conflict of interest or favoritism.  This extends to practices that involve employee hiring, promotion and transfer.  Close relatives, partners, those in a dating relationship or members of the same household are not permitted to be in positions that have a reporting responsibility to each other.  Close relatives are defined as husband, wife, domestic partner, father, mother, father-in-law, mother-in-law, grandfather, grandmother, son, son-in-law, daughter, daugher-in-law, uncle, aunt, nephew, niece, brother, sister, brother -in-law sister-in-law, step relatives, cousins, and domestic partner relatives.  Montana Silversmiths Inc. reserves the right to apply this policy to situations where there is a conflict or the potential for conflict because of the relationship between employees, even if there is no direct-reporting relationship or authority involved.***

Associated Employers Group, the third party investigators that investigated Mr. Eaton's grievance, found that MSS did not follow their own Employee Handbook. Travis Deacon

was under direct supervision of his father, Justin Deacon.  Travis was allowed training

and trips that no other individual was allowed.  Travis Deacon being trained in design,

after Eaton was given a computer to do design, then getting it taken away and Travis

being trained instead), Justin Deacon attempting to blame Eaton for not getting along

with his son (untrue and noted by Justin Deacon- changing the evaluation in front of

Eaton) Travis.   Additionally, Jesse Deacon, Justin Deacon's brother, was hired in

2014(1 year after Eaton) as an independent contractor and buckles were sent to him to

complete.  Next, Collete Schlehuber, HR, had her son, Cody Schlehuber, in design/fab.

Cody was in the design/fabrication department (a section that Eaton was told he would

be trained in-also, HR did not put Cody in this department in the documentation

received by Eaton from MHRB- the outline for the individuals in the departments in the

lay off) -  all conflicts of interest that lead the employees that were in higher positions

(supervisor, HR)  to work together to wrongfully discharge Eaton. Thus, MSS breached

their own contract several times, leading to retaliation and wrongful termination of Mr.

Eaton.


**CONCLUSION**

 Given that Mr. Eaton is able to state a claim for wrongful discharge under WDEA,

alleging that (1) he was an employee of Montana Silversmiths; (2) he was discharged

within the meaning of the WDEA; and (3) the discharge was wrongful. *Kestell v.*

*Heritage Health Care Corp.*, 858 P. 2d 3, 6 (Mont. 1993). Mr. Eaton is able to establish

all of the above in addition to being laid off within days of obtaining a letter from Collette, HR, stating that they were awaiting his return.  Additionally, please allow the court to exercise supplemental jurisdiction "over all other claims that are so related" to Mr. Eaton's Title VII retaliation claim "that they form part of the same controversy...."28 U.S.C. § 1367 (a). Given Mr. Eaton's age of over 40, the fact that the administration wanted to and voiced as well as acted upon hiring younger employees over him.  Given that Mr. Eaton had attempted to protect other employees from sexual/racial discrimination and harassment, putting himself in a protected class after filing a grievance of retaliation, and being harassed himself for attempting to protect others, and utlimately having his character defamed, shows that all counts are under supplemental jurisdiction. Thus, COUNT 3-6 should be taken on as supplemental jurisdiction.

Thus, Mr. Eaton is able to establish prima facie claims for all 6 counts .

**DAMAGES**

WHEREFORE, Plaintiff, Robert A. Eaton, demands judgment against the

Defendants, in an amount which will compensate him for:

1.Violation of his rights under Title VII of the Civil Rights Act of 1964;

2. Compensatory damages including lost wages, past and future and/or

impairment of power to earn money; physical pain, emotional distress and

humiliation, past and future; and past and future medical expenses;

3. Punitive damages to punish the Defendant for its willful, wanton,

oppressive, malicious, and/or grossly negligent conduct;

4. A permanent injunction against future acts of discrimination and harassment

against Plaintiff by Montana Silversmiths;

5. Trial by jury on all issues so triable;

6. Costs expended herein, including reasonable court and/or attorney fees;

7. Pre-judgment and post-judgment interest; and

8. Any and all other relief to which he may be entitled.

Respectfully submitted,

_____

Robert A. Eaton, Plaintiff

This Date of January 10, 2020

Case 1:18-cv-00065-SPW-TJC   Document ---   Filed 01/10/20          26

Certificate of Service

I hereby certify that on the 10th day of January, 2020, a copy of the previous document was served on the following persons by the following means:

___X___Mail

Moultan Bellingham, PC

27 North Street, Suite 1900

P.O. Box 2559

Billings, Montana 59103-2559

Telephone: (406)248-7731

FAX: 406-248-7889

Robert Eaton

January 10 2020