IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT A. EATON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MONTANA SILVERSMITHS,<br><br>　　　　　Defendant. | CV 18-65-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |

　　　　Plaintiff Robert A. Eaton ("Eaton") brought this action against Defendant Montana Silversmiths ("Silversmiths") alleging various causes of action related to his termination of employment. (Doc. 48.)  Before the Court is Silversmiths' Motion to Dismiss Count VII of Eaton's Fourth Amended Complaint, which alleges breach of contract, under Fed. R. Civ. P. 12(b)(6).  (Doc. 54.)  Eaton filed a response brief in opposition (Doc. 61) and Silversmiths has replied (Doc. 63).  This matter is fully briefed and ripe for review.

　　　　For the following reasons, the Court recommends Silversmiths' motion be **GRANTED** as to Count VII of the Fourth Amended Complaint.

/ / /

/ / /

I.     **Factual Background**

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations set out in the complaint, draw inferences in the light most favorable to the plaintiff, and construe the complaint liberally. *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009); *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

Silversmiths employed Eaton as a metalsmith beginning in March 2013. (Doc. 48 at 1-2.) Between his on-boarding and termination, Eaton worked in "3-4 departments" and exceled at his work, even winning an internal design contest. (*Id.* at 4, 6-7.) Eaton also trained "a young male in his early 20s … to do the work he did," starting in August 2016 through February 2017. (*Id.* at 4.)

On January 24, 2017, Eaton approached David Cruz, a company director, with issues and concerns regarding Eaton's immediate supervisor, Justin Deacon. (*Id.* at 4.) Eaton had observed Deacon's alleged "sexual and racial harassment with women and Latinos in the company." (*Id.*) Cruz said he would discuss Eaton's concerns with Lance Nearby,[1] vice president of the company. (*Id.* at 2, 4.) The next day, January 25, Nearby approached Eaton to insist he change his work hours, which disrupted the work schedule Eaton arranged when he took the job and

---

[1] The Court notes the spelling of "Nearby" also appears as "Neirby" in the Complaint. (*Cf.* Doc. 1 at 2 and at 5, ¶7, *e.g.*)

frustrated his regularly scheduled time he picked his children up from school. (*Id.* at 5, 9, 14.) Eaton was given an ultimatum to change hours or quit his employment. (*Id.* at 9.) Eaton ultimately complied with the change of work hours. (*Id.* at 5, 9.)

On April 4, 2017, Eaton received "subpar ratings" in his annual evaluation from Deacon, in which it was commented that Eaton did not get along with his supervisor's son, Travis Deacon. (*Id.* at 5, 14.) The next day, Eaton was called into a meeting with Deacon and Nearby. (*Id.* at 5.) Eaton noted that the comment in his evaluation that he did not get along with the supervisor's son, had been changed to "not getting along with his supervisor." (*Id.*) Eaton also raised his concerns about Deacon's sexual harassment at the meeting. (*Id.*) Eaton was told to go home. (*Id.*) The same day, Eaton penned a grievance letter for sending him home without good reason. (*Id.*) Eaton returned to work on April 10, 2017, still uncertain why he was told to go home on April 4. (*Id.*) Four days later, Eaton took medical leave to undergo surgery for a work-related injury. (*Id.* at 6.)

Silversmiths' human resources department responded to Eaton's grievance letter on May 15, 2017, stating a third-party investigation would be undertaken. (*Id.*) On June 9, Eaton received another response – presumably the findings of the investigation – and Eaton returned a letter of appeal to Silversmiths within a few days. (*Id.*) On June 14, 2017, Human resources informed Eaton there was no

3

mechanism to appeal a grievance. (*Id.*) Eaton was then laid off on June 15, 2017. (*Id.*)

On July 7, 2017, Eaton filed a Notice of Retaliation with the Montana Human Rights Bureau ("MHRB"), alleging sex and age discrimination, as well as retaliation for reporting harassment in the workplace. (*Id.* at 3.) MHRB issued a Notice of Dismissal, Notice of Final Agency Decision, and Notice of Right to Sue on January 23, 2018. (*Id.*) Eaton then filed the instant action on May 23, 2018, alleging retaliation (Count I); wrongful discharge (Count II); disability discrimination (Count III); age discrimination (Count IV); hostile work environment (Count V); and defamation of character (Count VI). (Doc. 5.)

Silversmiths filed a motion to dismiss Eaton's Second Amended Complaint on November 9, 2018. (Docs. 12, 16). The Court granted the motion as to Counts III – VI without prejudice, and granted Eaton leave to amend his complaint. (Doc. 33 at 3-4.). Eaton then filed a third and fourth amended complaint, each of which re-alleged Counts III – VI. (Docs. 34, 48.) The Fourth Amended Complaint also added a breach of contract claim in Count VII. (Doc. 48.) Silversmiths answered the Third Amended Complaint (Doc. 35), and in response to the Fourth Amended Complaint, filed the instant motion to dismiss Count VII. (Doc. 54.)

/ / /

/ / /

**II.    Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); see also *Chavez v. Bank of America, N.A.*, 2010 WL 1854087 at *4 (E.D. Cal. 2010) (summarizing the legal standard to be applied to Rule 12(b)(6) motions to dismiss). "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

The Court evaluates Rule 12(b)(6) motions to dismiss in light of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009). While "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quotations and citations omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citations omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

5

'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The claim need not be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts that are "merely consistent with" a defendant's liability fall short of this standard. *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 679 (first alteration added).

The Court's review of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is generally confined to the pleadings. *U.S. v. Ritchie,* 342 F.3d 903, 907 (9th Cir. 2003); *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998 (9th Cir. 2011). However, the Court also may consider documents attached to the pleadings or incorporated into the pleadings by reference. *Ritchie*, 342 F.3d at 908. Documents may be incorporated by reference into the pleadings where "(1) the complaint refers to the

document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999.

## III. Discussion

Silversmiths advances two grounds for dismissal under Rule 12(b)(6). First, Silversmith argues that Eaton's breach of contract claim is statutorily precluded by Montana's Wrongful Discharge from Employment Act ("WDEA"). (Doc. 55 at 5, 13.) Second, Silversmith asserts that Eaton's Fourth Amended Complaint fails to plead any facts or allegations that establish the existence of an enforceable contract between Silversmiths and Eaton. (*Id.* at 6, 18.)

### A. Existence of a Contract

Eaton's breach of contract claim is based upon Silversmith's "Employee Handbook" ("Handbook").[2] Eaton alleges that the Handbook constitutes a contract, and that Silversmith breached three specific sections of the Handbook: (1) Communications; (2) Use of Paid and Unpaid Leave; and (3) Nepotism, Employment of Relatives, and Personal Relations. (Doc. 48 at 20-23).

---

[2] Silversmiths submitted the Handbook with its motion to dismiss. (Doc. 55-1.) Although the Handbook is not attached to fourth amended complaint, it is referenced extensively in the pleading; it is central to Eaton's claim for breach of contract; and neither party questions the authenticity of the document. It may therefore be considered in connection with Silvermiths' motion to dismiss. *Corinthian Colleges*, 655 F.3d at 999.

With respect to the communications section, the complaint alleges that the Handbook encourages employees to speak to their supervisors or managers at any time for any reason. (*Id.* at 21.) Eaton alleges that Silversmiths breached this provision because he received negative marks on his performance evaluation after he expressed his concerns regarding sexual and racial harassment to a director of the company. (*Id.*)

With respect to the leave section of the Handbook, Eaton alleges Silversmiths breached the provision of the Handbook which provides for FMLA leave for its employees. (*Id.*) He alleges that he was told he would not qualify for FMLA leave while on worker's compensation and was not provided a form to request FMLA. (*Id.*) Thus, he contends he was not allowed to find out whether he qualified for FMLA leave. (*Id.*)

As to the nepotism section, Eaton alleges that Silversmiths breached the company's nepotism provisions in the Handbook, resulting in more favorable treatment to employees being supervised by family members. (*Id.* at 22-23.) Eaton alleges this allowed employees in higher positions to work together to discharge Eaton. (*Id.* at 23.)

To establish the existence of a contract, Eaton must establish "(1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Mont. Code Ann. § 28-2-102.

8

"Mutual consent consists of an offer and an acceptance of that offer." *Chipman v. Northwest Healthcare Corp., Applied Health Services Inc.*, 317 P.3d 182, 185 (Mont. 2014). The consent of the parties must be "mutual; and communicated by each to the other." Mont. Code Ann. § 28-2-301.

Under Montana law, employee handbooks distributed to employees after hiring are generally not considered a contract. *Kittleson v. Archie Cochrane Motors, Inc.*, 813 P.2d 424, 427 (Mont. 1991). "[T]he handbook constitutes a unilateral statement of company policies and procedures, because its terms are not bargained for, and because no meeting of the minds occurred." *Id.* (citing *Gates v. Life of Mont. Ins. Co.*, 638 P.2d 1063, 1066 (Mont. 1982) (employee handbook contained a unilateral statement of company policies and procedures and was not a contract)). Eaton does not allege in his complaint that the policies and procedures in the Handbook were any way bargained for by the parties.

Eaton argues, however, that he "was offered a job with Silversmiths and had to sign the employee handbook in order to accept all policies and procedures to work there." (Doc. 61 at 4.) Thus, Eaton maintains, there was an offer by Silversmiths and his acceptance of the offer, creating a binding contract. (*Id.*) But "[t]o be considered an offer, the offeror must manifest a willingness to enter into a bargain." *Chipman*, 317 P.3d at 185. Here, Silversmiths expressly stated its intention not to be contractually bound by the Handbook. The Handbook states:

9

> Neither this handbook nor any other company document confers any contractual right; either express or implied, to remain in the company's employ. Nor does it guarantee any fixed terms and conditions of your employment. No supervisor or other representative of the company (except the president) has the authority to enter into any agreement for employment for any specified period of time or to make any agreement contrary to the above. (Doc. 55-1 at 2.)

The Handbook further provides:

> There are several things to keep in mind about this handbook. First, it contains only general information and guidelines. It is not intended to be comprehensive or to address all possible applications of, or exceptions to, the general policies and procedures described. (*Id.*)
>
> . . .
>
> The procedures, practices, policies and benefits described here may be modified or discontinued from time to time. (*Id.*)

In 2013, Eaton also signed an acknowledgement that he received the

Handbook, which states:

> I understand this Handbook reflects only a non-exclusive summary of some current policies and benefits. It does not create a contract of employment. Montana Silversmiths Inc. retains the right to change these polices and benefits, at its discretion and without notice. Other policies, procedures, and plans may also exist and may be equally applicable in a given situation. (Doc. 55-2.)

Eaton's 2015 acknowledgment similarly provided:

> I understand that any and all policies and practices may be changed at any time by Montana Silversmiths Inc. and the company reserves the right to change my hours, wages and working conditions at any time. (Doc. 55-3.)

The Montana Supreme Court considered an employee handbook which

contained similar language in *Chipman*. In that case, employees signed a receipt

for each edition of the company handbook, which stated that the employee understood that nothing in the handbook could be "construed as creating a promise of future benefits or a binding contract with [the employer]." *Chipman*, 638 P.2d at 184. It further provided that the handbook stated the policies and practices in effect at that time, but they "are continually evaluated and may be amended and modified or terminated at any time." *Id.*

The Montana Supreme Court found the policies lacked the required contractual element of mutual consent. *Id.* at 186. The court said "[g]iven these express disclaimers, the Employers' objective manifestations leave no doubt that they did not intend the statement of benefits to bind their future obligations, and employees could not reasonably rely on the benefits described in the handbook as existing indefinitely." *Id.*

Just as in *Chipman*, Silversmiths expressly disclaim that the Handbook was not intended to confer any contractual right; stated that the Handbook does not guarantee fixed terms of employment; and made clear the policies and practices outlined may be changed at any time. The language makes clear that there was no mutual consent indicating the parties intended to be bound to the Handbook as a contract.

/ / /

/ / /

11

B.     **WDEA Exclusivity**

Silversmiths further argue that Eaton cannot maintain a common law breach of contract claim based on the same underlying discharge from employment, because the WDEA provides the exclusive remedy for wrongful discharge and preempts common law remedies. (Doc. 55 at 13.)

The WDEA "sets forth certain rights and remedies with respect to wrongful discharge . . . [and] provides the exclusive remedy for wrongful discharge from employment." Mont. Code Ann. § 39-2-902. It further provides that "[t]here is no right under any legal theory to damages from wrongful discharge under this part for pain and suffering, emotional distress, compensatory damages, punitive damages, or any other form of damages except as provided in [the Act]." Mont. Code Ann. § 39-2-905(3). It also makes clear that, except as provided in the WDEA, "no claim for discharge may arise from tort or express or implied contract." Mont. Code Ann. § 39-2-913.

Accordingly, the Montana Supreme Court has consistently recognized that it is "beyond dispute that the Wrongful Discharge From Employment Act … is the exclusive remedy for wrongful discharge in Montana." *Ruzicka v. First Healthcare Corp.*, 45 F.Supp.2d 809, 811 (Mont. 1997). Nevertheless, the Montana Court has also recognized that claims that are unrelated to an alleged wrongful discharge are not preempted. *Beasley v. Semitool, Inc.*, 853 P.2d 84, 86-

12

87 (Mont. 1993) (the WDEA "bars claims for discharge arising from tort or implied or express contract, but does not bar all tort or contract claims merely because they arise in the employment context.") Therefore, claims which are separate and independent, and which aver damages separately from the damages claimed for wrongful discharge, are not barred. *Id.* at 86. But claims which are "inextricably intertwined with the discharge and whose claims for damages are caused by an asserted wrongful discharge" are barred. *Daniels v. YRC., Inc.*, 2013 WL 449300, *1 (D. Mont. Feb. 5, 2013); *Beasley*, 853 P.2d at 87.

None of Eaton's alleged contract claims constitute separate and independent claims which could have been asserted in the absence of his discharge. His claim based on the communication section of the Handbook, for example, alleges that the marks on his performance evaluation were downgraded when he "overstepped the hierarchy when verbalizing his concerns in the company …" (Doc. 48 at 21.) But he does not allege that he was damaged in any way separately from the damages he claims for his discharge. See e.g.*, Mysse v. Martens*, 926 P.2d 765, 774 (Mont. 1996) ("because [plaintiff] did not allege any damages arising from this breach separate from the damages arising out of her discharge, the complaint is insufficient to indicate a separate claim.").

The same is true with respect to Eaton's contract claim based on the leave section of the Handbook. Eaton does not allege a claim under the FMLA, or that

he was wrongfully denied FMLA leave. He alleges that he was denied the opportunity to "at least submit an FMLA leave form request to assess whether he could obtain this in conjunction with worker's compensation." (Doc. 48 at 21.) Eaton explains that had he been placed on FMLA leave, he would have been exempt from Silvermiths' layoff, and apparently not terminated. (Doc. 61 at 6.) Thus, Eaton's contract claim based on Silvermiths' leave policy is grounded on his termination, and again does not allege that he incurred damages separately from his discharge.

Finally, his contract claim based on the nepotism provisions of the Handbook is clearly not a separate and independent action. Eaton alleges that the "conflicts of interest" created by nepotism within the company "lead the employees that were in higher positions (supervisor, HR) to work together to wrongfully discharge Eaton." (Doc. 48 at 23.) Again, the claim is based on his wrongful discharge, and does not allege that he was separately damaged by nepotism within the company.

Eaton summarizes the basis for his breach of contract claim by stating: "Thus, [Silvermiths] breached their own contract several times, leading to retaliation and wrongful termination of Mr. Eaton." (*Id.*) These allegations make clear that Eaton's contract claims are inextricably intertwined with his wrongful discharge claim, and do not constitute separate and independent claims which

14

could have been asserted in the absence of his discharge.  The claims are barred by the WDEA's exclusivity provisions.

## IV. Conclusion

The Court finds that Eaton's claim for breach of contract based on Silversmiths' Employee Handbook fails to state a plausible claim and is further barred by the WDEA's exclusivity provision.  The Court further finds that any amendment of Eaton's breach of contract claim based on the Handbook would be futile, and therefore recommends that the claim be dismissed with prejudice.

Therefore, the Court **RECOMMENDS** Defendant Montana Silversmiths' Motion to Dismiss (Doc. 54) be **GRANTED**, and that Count VII of Eaton's Fourth Amended Complaint be **DISMISSED WITH PREJUDICE**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

/ / /

/ / /

/ / /

served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 3rd day of August, 2020.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge