FILED

MAR 22 2022

Clerk, U.S. Courts
District Of Montana
Billings Division

Robert A. Eaton
113 Moose Track Dr.
Roberts, Montana  59070
Ph (406-445-9105)
Fax (406-545-2319)
Email: eatonfarm7@gmail.com
Case No. CV 18-65-BLG-SPW-TJC
Plaintiff in Pro Per

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| ROBERT A. EATON,<br><br>Plaintiff,<br><br>-vs-<br><br>MONTANA SILVERSMITHS,<br><br>Defendant. | Case No. CV 18-65-BLG-SPW-TJC<br><br>**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT** |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff, Robert A. Eaton, pro se, hereby responds to Defendant's Motion for Summary Judgment ("Motion"). In addition to the response that follows, Plaintiff expressly incorporates by reference, his Statement of Facts to be disputed and exhibits thereto (Plaintiff's Statement of Facts to be disputed), and the current Affidavit of Robert Eaton and supporting documents

("Current Affidavit"). Please refer to Attachment #6 on Eaton's "Statement of Disputed Facts, Second Summary Judgment..." for referencing all Attachments from Document 105, secondary to them being put in differently than Eaton Anticipated. He put in an outline for these attachments to be referenced for ease of review/referencing. Thank you.

Respectfully Submitted,
Robert EAton Pro Se
113 Moose Track Dr.
Roberts, Montana   59070
(406) 445-9105
eatonfarm7@gmail.com

# TABLE OF CONTENTS

**Introduction**………………………………………………………   **4**

**Statement of Facts in Dispute**…………………………………   **4**

**Summary Judgment Standard**…………………………………   **5**

**Argument**……………………………………………………………   **7**

**As A Matter of Law**………………………………………………   **19**

**Tangible Consequences**…………………………………………   **20**

**Still in Controversy**………………………………………………   **21**

**Summary**……………………………………………………………   **22**

**Conclusion**…………………………………………………………   **29**

# TABLE OF AUTHORITIES

*Hancock v. Dodson* 958 F. 2d 1367, 1374 (6th Cir. 1992).............................. 5

*Anderson v Liberty Lobby, Inc. , 477 U.S. 242, 250* (1986)............................ 5

*Right to Life v. Butler, 983 F. Supp. 1209, 1215 (W.D. Ark. 1997), aff'd* 146 F. 3d 558 (8th Cir. 1998).................................................................... 6

*Giordano v. Lee, 434 F. 2d 1227, 1230 (8th Cir. 1970)*............................ 6

*Brunswick Corp. v. Vineberg*, 370 F. 2d 605, 612 (5th Cir. 1967).............. 6

*Barich v. Ottenstror* (1976),................................................................ 6

*Harland v. Anderson* (1976............................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88* (1986).6

*Wednesday Wagner v. Federal Election Commission* (July 12, 2012) ........... 6

*Toll v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir., 1992)................. 6

*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959)....................................... 7

*Picking v. Pennsylvania R. Co.*, 151 Fed 2nd 240............................... 7

*Pucket v. Cox*, 456 2nd 233  (1972) (6th Cir. USCA)................................... 7

*See Saber Int'l Sec v. Torres Advanced Enter. Sols*, LLC, 72 F. Supp. 3d 131, 136 n.3 (d.D.C. 2014)........................................................................ 8

*Celotex Corp v. Catrett*, 477 U.S. 317................................................... 12

*T.W. Elec. Services, Inc. v. Pacific Elec. Contractor's Ass'n*, 809.............. 12

*Bergene v. Salt River Project Agr. Imp. & Power Dist.* 272 F. 3d 1136, 1442 (9th Cir. 2001).................................................................................. 12

*Davis v. Team Elec. Co.*, 520 F3d. 1080, 1089 (9th Cir. 2008.................. 13

*Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132, n.4. (9th Cir. 2003), ........... 16

*Burton v. Freescale Semiconductor, Inc.*798 F.3d 222............................ 17

*Chauhan v. M. Alfieri, Co., Inc*, 897 F. 2d, 123, 127 (3d Cir. 1990............ 17

*St. Mary's Honor Ctr. v. Hicks* - 509 ............................................... 18

*Moyo v. Gomez*, 40 F3d 982, 984 (9th. Cir. 1994)..................................... 19

*EEOC v. Crown Zellerbach Corp.*, 720 F23d .................................... 19

*Sias v. City Demonstration Agency*, 588 F2d 692, 685.......................... 19

*Hoyle v. Freightliner*, LLC, 650 F3d 321, 337 (4th Cir. 2011.................. 21

*Crawford, 555 U.S. at 276*.......................................................................28

*Reeves v. Sanderson Plumbing* (2000)........................................................ 29

*Yanowitz v. L'Oreal USA, Inc.*(2005) ................................................ 29

TITLE VII Civil Right Act of 1964 ................................................ 4

MCA 39-2-912......................................................................... 4

## **INTRODUCTION**

Eaton's Claim is of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000(e)-3. The Court should NOT grant Summary Judgment in favor of Defendant Montana Silversmiths on Eaton's retaliation claim, but instead Maintain the Court's original Judgment for the Plaintiff (Doc. 113) having a triable issue in regards to Plaintiff's retaliation claim stemming from his 2017 performance evaluation because it is upheld as a matter of law and facts remain in dispute.[1] Additionally, the Court raised the point (Doc. 113 at 27-28) that "Eaton argued he was terminated for reporting violation of public policy (Doc. 113 at 28). Thus, Eaton was terminated for reporting sexual harassment[2] and racial discrimination-discharge in violation of MCA §39-2-904(1). However, the Court stated that because Eaton's claim of being terminated in retaliation for reporting sexual harassment and racial discrimination .....falls "squarely within the Title VII's antiretaliation provision", ...."Thus Title VII of Civil Right Act of 1964[3] provides 'a procedure or remedy for contesting the dispute' thus being barred from coverage under WDEA (Doc 113 at 28). Please note, without any type of evidence

---

[1] Defendants have yet to dispute comment on Eaton's 2017 performance evaluation regarding "Sidesteps proper reporting concerns outside management hierarchy" with low marks.

[2] Montana Silversmiths never once held a sexual harassment workshop to help people understand what this was.

[3] Chapter 2 of the Montana code Annotated, contains the anti-discriminations statutes in Montana. MCA 39-2-912- Types of conduct Prohibited include Retaliation against a person supporting the anti-discrimination laws. Mont. Code Ann §49-2-301. This section allows supplemental jurisdiction ..

or financial statement from Montana Silversmith for 2016-present, which has been

requested but has not been provided. Financial loss should be noted as hearsay.

## STATEMENT OF FACTS IN DISPUTE

Robert Eaton, Pro se, incorporates by references his Separate Statement of Facts in

Dispute (Referenced as SDF #___ ), included with responses to Defendant's

Statement of Undisputed Facts (Referenced as SUF#____ and provided Eaton's

direct response with page number, and all attachments thereto as if set forth fully

herein. Again, a majority of the evidence and attachments are referenced, for ease

of review, to the attachments provided in the original and first Summary Judgment

under Document(s) 96 and 105. [4]


## SUMMARY JUDGMENT STANDARD

Summary judgment is only satisfactorily granted if there are no genuine issues of

material fact and the movant is entitled to judgment as a matter of law. Rule 56(c),

M.R.Civ.P. While the initial burden is on the movant, the burden shifts where the

record discloses no genuine issues of material fact. The party opposing the motion

must then present specific facts raising a factual issue. Rule 56(e), M.R.Civ.P.

*Hancock v. Dodson* 958 F. 2d 1367, 1374 (6th Cir. 1992). " If there are 'any genuine

---

[4] When referring to Document 105 attachments, because they were scanned in differently than Eaton anticipated and somehow the last page of the Exhibit list was missing, Eaton Refers to Attachments 1-14, then the page number referring to number of total pages scanned in on the attachment (e.g., Doc. 105-6 at 4- the page 4 would be 4 out of the 82 total pages scanned in on that attachment) for ease of review.

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party,' then summary judgment may not be granted." Id,. (*quoting Anderson v Liberty Lobby, Inc.* , *477 U.S. 242, 250* (1986).

***USED SPARINGLY*** "Summary judgements should be cautiously invoked so that no person will be improperly deprived a trial of disputed factual issues." *Arkansa Right to Life v. Butler, 983 F. Supp. 1209, 1215 (W.D. Ark. 1997), aff'd* 146 F. 3d 558 (8th Cir. 1998). It is "an extreme remedy which should be sparingly employed." *Giordano v. Lee, 434* F. 2d 1227, 1230 (8th Cir. 1970). "Summary judgment is a lethal weapon, and courts must....beware of overskill in its use". *Brunswick Corp. v. Vineberg*, 370 F. 2d 605, 612 (5th Cir. 1967).  Conclusory or speculative statements are insufficient and the trial court has no duty to anticipate possible proof. *Barich v. Ottenstror* (1976), 170 Mont. 38, 550 P.2d 395; *Harland v. Anderson* (1976), 169 Mont. 447, 548 P.2d 613. "Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88* (1986). Each of the appellant's claims for relief must be examined in the light of the above rules. *Wednesday Wagner v. Federal Election Commission* (July 12, 2012)

"Failure of either party to raise an argument in these summary judgment memorandum shall not constitute a waiver of any argument previously raised…...either party may rely on the declarations previously filed by plaintiffs; the

6
Robert Eaton
Pro Se

responses of the plaintiffs to the Requests for Admission made by the FEC (internal

quotations omitted). It is not even necessary that a plaintiff request appropriate

relief, properly categorize legal theories, or point to any legal theory at all. *Toll v.*

*Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir., 1992) (complaint need not point

to appropriate status or law to raise a claim for relief; complaint sufficiently states

a claim even if it points to no legal theory or even if it points to wrong legal theory,

as long as "relief is possible under any set of facts that *could be established*

consistent with the allegations") (emphasis supplied)

However, pro se pleadings are regarded in many cases to be held at less stringent

(NOT high standards of perfection as lawyers) standards without regard to

technicalities. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1959); *Picking v.*

*Pennsylvania R. Co.*, 151 Fed 2nd 240; *Pucket v. Cox*, 456 2nd 233  (1972) (6th

Cir. USCA)

## ARGUMENT

 Eaton met the prima facie Case for defending retaliation to have a triable matter

for court, and the trial date has been set.  Mr. Eaton met his burden of proof to

withstand Summary Judgment once (Doc. 113) and also previous dismissal

attempts. The Defendants are trying to assert/enforce that Eaton had contested

relationships with his co-workers, which is simply untrue.  It is documented, with

evidence and the Court noted 1of the 2 items regarding getting along with

co-workers.  First, the Court noted (Doc. 113 at 23)-referencing Deacon's Deposition (Doc. 105-4 at 44:28:18-30:2) that "Deacon's testimony that the two got along 'pretty good' and never 'got into a fight' prior to April 5th, 2017" and 2) The initial 2017 performance evaluation comments had touted, "while interacting well with Rick and Brian" (Doc. 105-10 at 35 PLTF 1728).  Additionally, Eaton's 2016 performance evaluation by Justin Deacon touted, "Robert is a very hard worker, never looks up, his engraving is coming along very nicely, he is always in good spirits and is easy to get along with."[5](Doc. 105-10 at 34;PLTF 1726-1727)(SDF#34; 116 (g) and (h)_). Also, Eaton's former supervisor, Curt Robbins, agreed with this comment (Doc. 96-22 at 35:4-9) and Rick Waltner (Eaton's co-worker) also agreed with the above statement in his testimony (Doc. 96-23 at 22:14-18)

This second attempt at Summary Judgment is just an attempt to belittle Eaton's character for anticipation of litigation. *See Saber Int'l Sec v. Torres Advanced Enter. Sols*, LLC, 72 F. Supp. 3d 131, 136 n.3 (d.D.C. 2014). ("[R]records created in anticipation of litigation do not fall within the business records exception"). Montana Silversmiths is taking their undocumented and unjustified accounts of poor performance evaluations to use as a weapon on the 2016-2017 lay off plan. The 2016-2017 layoff plan clearly states that the 4/3/17 performance evaluations

---

[5] Robert obtained an overall Rating of 3.48 on his 2016 performance evaluation with 12 'excellent' ratings as opposed to 2.7 with 1 excellent rating.

performance evaluations in the lay off plan (SDF #36, 48)(Doc. 105-13 at 19¶ 2-(e)).  The court already ruled on this in the first Summary Judgment (Doc 113 at 22 ). PLEASE MAKE JUDICIAL NOTICE THAT THE PERFORMANCE EVALUATIONS WERE USED IN THE 2017 LAYOFF. IF THERE IS ANY FACT IN DISPUTE, THEN SUMMARY JUDGMENT CANNOT BE AWARDED (Doc. 113 at 12)

The Defendant's belittling of Mr. Eaton's Employment Retaliation Case is not justified in the U.S. courts or the U.S. Constitution. Under the Title VII Civil Rights Act of 1964.  A person should not be retaliated against for reporting a Public Policy Violation, which is exactly what happened with Lance Neirby making Justin Deacon change and add comments to Eaton's performance evaluation (SDF#47-62). This also happened in the April 5th meeting between Mr. Eaton, Lance Neirby, and Justin Deacon ( SDF#53-62).  However miniscule the Defendants think an Employment Retaliation Case can be, there are several damages that can be addressed for violation one's Constitutional Rights and once that Retaliation takes place, it can be used to change a good employees life for standing up for others, and reporting, in good faith efforts, to have the harassment stop.  And, then, using this as a weapon to discharge that very employee without any verbal or written warning goes against Montana Silversmiths' own policies on

how they handle disciplinary actions.[5]  All Supervisors and HR in their Depositions

discussed how, when going into any form of discipline, they would follow the

policies, and give two verbal warnings, then a a written warning, then discharge

(SDF#52, 54, 60).  Mr. Eaton was given nothing, only good reviews in his

performance evaluation in 2016, which included the comment from Supervisor,

Justin Deacon, "[Robert Eaton is] always in good spirits and easy to get along

with." (Doc. 105-10 at 34; PLTF 1727). Mr. Eaton performed well on all

performance evaluations until 2 unjustified comments made by the very VP, Lance

Neirby, who was in charge of performance evaluation to determine layoff

(according to the company's layoff plan-(Doc. 105-9 at 73 #1(e); MTS 1176).  The

Defendant's argument discusses how, "under FRCP 56 that, as a matter of law, the

evaluation scores and comments do not sufficiently qualify as an adverse

employment action linked to Eaton's asserted protected activity" (Doc. 138) is

ridiculous.  These low scores were to be used on the 2016-2017 layoff.  The

performance evaluations of 2017 were one of the top criteria that was set to

determine who was to be laid off (Doc 105-13 at 17-18; MTS 314-315). In the

most recent Summary Judgement, the Defendant's are now trying the be dismissive

of the criteria of performance evaluations that they used in the layoff and put more

weight to other of the 5 criteria for layoff, such as cross training, value to the

---

[5] "The company may use verbal or written warnings...."(Doc. 105-8 at 22¶  1; MTS 184)

business, and seniority they have changed to say carry the most weight, which is NOT what was said in their defense in the MHRB investigation (Doc. 105-13 at 11; MTS 1798).

AND NOW a new defense never brought about before (showing they keep changing their stories) is that they had a legitimate business judgment/reason, a non-discriminatory basis for providing the performance review at issue (Doc. 138 at 6). Looking at the suspect timing mentioned in the MHRB investigative report ( Doc. 105-10 at 11; PLTF 1514;) which was corroborated in the Courts account and order (Doc. 113 at 22- referencing temporal proximity of events) which supports the "inference of causality" as well as going against their only personnel policy[6]. Montana Silversmiths went against their own policies of harassment/discrimination reporting and investigation, their own policies of discipline (SDF#45, 47, 137) which include making the employee aware of their concerns via at least verbally warned about one type of issue or conflict, however, Eaton was not given any verbal or written warning before the performance evaluation, which his character and interaction with others was attacked, and the evaluation was placed in the employees (Eaton's) permanent file (SDF #23;Doc. 105-8 at 14 ) and this was noted by the Court (Doc. 113 at  22). Therefore, there does not appear to be a

---

[6] "Montana Silversmiths employee handbook states,"Montana Silversmiths Inc. requires reporting of all incidents of discrimination or harassment to which any employee has been subjected or <u>becomes aware</u>. It is the policy of Montana Silversmiths Inc. to promptly and thoroughly investigate such reports.  Montana Silvemrsiths Inc. prohibits retaliation against any individual who reports discrimination or harassment or who participates in an investigation of such reports" (Doc. 105-8 at 6¶ 5; MTS 168)

legitimate, non-discriminatory reason , especially when these scores would be used as on of the criteria for the layoff (SDF#37,38).  To dismiss this claim would allow Employers to discharge an employee for standing up for others and using their Civil Rights without fear of losing their occupation over it.  This would definitely show that a reasonable person would not make a complaint without fear of being retaliated against, thus giving the Employers too much power over the employees and their God given Constitutional Rights in the United States of America.

When looking at the Summary Judgment Standards, like in *Celotex Corp v. Catrett*, 477 U.S. 317, one must initially demonstrate an observance of any dispute over material fact and Eaton HAS demonstrated a dispute over material facts surrounding his performance evaluations (Doc. 113 at 42)with it being noted in the first Summary Judgment (Doc. 113 at 14) that the plaintiff only "need produce very little evidence", quoting *Davis v. Team Elec. Co.*, 520 F3d. 1080, 1089 (9th Cir. 2008).  Furthermore,  *T.W. Elec. Services, Inc. v. Pacific Elec. Contractor's Ass'n*, 809. F2d 626, 630 (9th Cir. 1987)- "The court must view the evidence in the light most favorable to the non-moving party", which is what the Court did in Doc. 113.


 The Defendants use *Celotex Corp.*, 477 US at 322 again to show how Summary Judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and which time

that party will bear the burden of proof at trial". This is exactly what the Defendant's atetmpted in their First Summary Judgment.  However, they did not establish that there was no genuine issue of Material Fact.  In fact, The Court Ruled that pretext can be shown by either direct or circumstantial evidence, quoting "only a small amount of direct evidence is necessary in order to create a genuine issue of material fact as to pretext" -they quoted-*Bergene v. Salt River Project Agr. Imp. & Power Dist.* 272 F. 3d 1136, 1442 (9th Cir. 2001).(Doc. 113 at 15)  In fact, the Court Ruled on the downgraded and written remarks being changed on the performance evaluations as being a material fact because of the timing of the sexual harassment and racial discrimination claims were within the same date/time, stating,

*".. But the 2017 evaluation was conducted at the same time as Eaton's report of sexual harassment to Neirby on April 4, 2017. In fact, Nearby made changes to the evaluation after the meeting with Eaton on April 4th, 2017 to allege that Eaton had a "challenging relationship" with his direct supervisor[referencing Doc. 96-3 at 9]. Given the light burden required to overcome Montana Silversmiths' motion for summary judgment, the evidence is sufficient to create an issue of fact for trial as to causation"*(Doc. 113 at 23).

The Defendant's have been given a second chance at generating yet another rationale that they felt worked well with their other counts in the First Summary Judgment, by showing a pretext of legitimate business reason.  In this summary

Judgment, they are going to use the same theory, in which they felt the court ruled in their favor.

The Court Already found in Eaton's Case that there is a genuine issue for trial, there is evidence that supports material facts (Doc. 113 at 18-23)-1)Eaton showed the Court that he was a qualified employee; 2)was in a protective class;  and 3) there is a causal connection in time "very close" of Eaton reporting sexual/racial harassment, and being retaliated against. The Court already ruled on Eaton meeting the 3 stage criteria for prima facie case for retaliation  with respect to his performance evaluation (Doc. 113 at 22), stating that the Court interpreted the anti retaliation provisions "more broadly" - referencing Title VII in *Burlington Northern Santa Fe Ry. Co. v White,* 548 U.S. 53 (2006).

The Defendant's are void any Material Facts to demonstrate that– once Eaton reported sexual harassment and racial discrimination to HR, Colette Schlehuber, and the VP, Lance Neirby, were the discrimination claims –that Upper management took actions to investigate Eaton's allegations.  No interviews were completed after Eaton's complaints from 2015 through 2017. No disciplinary action, and no Material facts or evidence to support their claims of 'investigation'. They did not take steps to remedy the situation/ harassment, Justin did not know and even stated himself that it wouldn't have gotten so bad, if only he knew about it (SDF #26).

Additionally, the Defendants did not produce any material facts to support why they downgraded Eaton's Performance evaluation of 2017, the very two areas that were high in 2016.[7] Defendants have no documentation of discussions, remarks, nor meetings with Eaton to corroborate any rationale as to why these areas would be downgraded from the 2016 performance evaluation (SDF #45, 46, 116(f), . Thus, Defendants have no rationale to downgrade Eaton's performance evaluations in the first place.(SDF#45, 46, 47, 48, 49, 55, 58, 59, 114) .

The Defendants continuously steer clear of the OTHER downgraded and low mark on the performance evaluation, which is "Resolves Conflicts in an appropriate manner" (Doc. 105-10 at 33), stating "Sidesteps proper reporting concerns outside management hierarchy", which Eaton completed according to Montana Silversmiths handbook.(SDF#19, 47)

If Justin Deacon stated in his deposition that the two lowest Marks Eaton received were not written by him (Doc. 96-21 at 65:19-66:22)(SDF45-47)[8] and Justin said he got along with Eaton well prior to the April 5th, 2017 meeting (SDF #49,

---

[7] "Interaction with Co workers" which was "Good" in 2015 and "excellent" in 2016 (Doc. 105-10 at 29-36).

[8] (Q) I was just wondering why I was given a four when on--I don't know what this -- this is an employee handbook, 163-- why I'd be given a four if I followed what it said in it?
***
(THE WITNESS:JUSTIN DEACON) I believe that this is---this are the two things that Lance changed, right?
BY MR. EATON:(Q): I think, yeah.
A: Yeah. So, I didn't even write that.

#83(9)). Then it stands to reason that Eaton's performance evaluation would have yielded higher marks if Justin would have been allowed to put his original ratings instead of Lance's lowest ratings possible.  Additionally, if the performance Evaluation was changed the day <u>after</u> Eaton's reporting of Sexual/racial discrimination on the eve of April 4th, in which two things happened.  During the April 5th meeting, first, Lance took off the statement regarding "At Times creates an unwelcoming environment with regards to Travis while at the same time interacting well with Rick and Brian" (Doc. 105-10 at 35) (SDF#45, 47, 49). Lance removed the statement about "Unwelcoming environment with Travis" AND took OUT the comment of "Getting along well with Rick and Brian"[9] and stated in his email to Colette, "I decided to remove the following due to us not speaking with him about it previously. I kept the overall rating the same" (Doc. 105-10 at 42)(SDF#60) It stands to reason that once the comment was taken because Eaton had not spoken about any issues with getting along with co-workers, then the rating would have been upgraded, especially since it said he was getting along well with Rick and Brian.  Additionally, Justin Deacon Stated in his testimony that this was a "new" performance evaluation. (SDF #61; Doc. 96-21 at 24:14-25 and 25:1-4) and detailed below:

---

[9] Since Eaton was getting along with his co-workers, and they decided to remove the comment about "unwelcoming environment" then it stands to reason that Eaton's score would be higher. BUT they took that out too without reasoning or rationale.

Q: So do you remember Lance Neirby switching that comment to a new performance evaluation on the other side?
A: Yes, I do remember that.
Q: Okay. Do you think it should have been changed that day or I was given a chance to, I guess, change my actions? Or should that have been a written warning first before being put on this?
A: I don't know.....***
Q: Do you think there should be a written warning before it is put on an evaluation to make changes?"
A: Possibly.
 Thus, Justin agrees that the changing of the performance became a "new

performance evaluation."

However, then, in front of Eaton, Lance changed this in writing to "Challenging

relationships exist between employee and direct supervisor" then Lance got up and

printed it for the personnel file(Doc. 105-10 at 37; PLTF 1730)(SDF#53-64).  A

relationship which was fine before the meeting on April 5th[10] where Eaton was

forced to confront Justin Deacon, his supervisor, about his concerns with racial

discrimination and sexual harassment (SDF#45). Writing down a new issue that

came up BECAUSE Eaton was forced to talk about sexual/racial harassment and

changing the specific comment, to attack Eaton and Justin's relationship that

eroded during a forced confrontation shows that Lance was using Eaton's

complaints of sexual and racial harassment to lower Eaton's marks on the

performance evaluation.  The comment on the performance evaluation was

changed to almost mock that fact that Eaton had strongly felt that his concerns

---

[10] Please keep in mind Eaton has a documented meeting by himself and Lance stating Eaton brought up sexual and racial harassment the eve of April 4th (Doc. 105-10 at 41-42; MTS 59-60)

should be kept confidential (SDF # 19, 20, 22) , but Lance pushed this confrontation onto Eaton and Deacon.[11] Then it was used to maintain the level 4, the worst number you can obtain, on his performance evaluation, a number that should NOT have been on Eaton's performance evaluation absent Lance's forced intervening in the performance evaluation, which is historically an interaction between supervisor and employee, unless there is a disciplinary action, which Eaton clearly has shown was not the case and Defendants admit on their own accord that Eaton did not have any Disciplinary actions against him. (Doc. 105-14 at 70(d); PLTF 1713)(SDF#49, 53-54, 60, 20, 38).

Evidence of pretext can include negative treatment that occured after the employee engaged in activity protected under the law, such as filing a charge, participating in an Investigation. In *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132, n.4. (9th Cir. 2003), a federal Appellate Court found that the plaintiff's lowest scores in her performance Evaluation("which served as the central, if not sole, facter in her termination") were in "soft skills that cannot be taught such as being upbeat". The Court stated: "Where termination decisions rely on subjective evaluations, careful

---

[11] Additionally, Montana Silversmiths handbook states, "Confidentiality will be maintained as much as possible throughout the investigatory process to the extent consistent with adequate investigation and appropriate corrective action."(Doc. 105-8 pg.8; MTS 170) Thus, NOT investigating Eaton's allegations is not only directly against the defendant's policies, but directly against Title VII. *Faragher v. City Boca Raton* (1998). that an employer can avoid actionable harassment by investigating and taking prompt remedies with an employee who alleges sexual harassment.

analysis of impermissible motivations is warranted because such evaluations are particularly susceptivel of abuse and more likely to mask pretext." Additionally, be aware of suddenly placing an employee under a microscope. As a Federal Appellate Court noted, *Burton v. Freescale Semiconductor, Inc.*798 F.3d 222 (5th Cir. 2015), 14-50944, "Evidence of sudden unprecedented campaign to document [an employee's] deficiencies and thus justify a decision that had been already made, could raise an inference of pretext." Eaton was placed under a microscope, having two comments and sections of his performance evaluation of 2017 being significantly downgraded from years prior (SDF#44, 45, 46, 47, 48).  When Eaton relayed this to his VP, then the VP forced Eaton to tell his direct supervisor of his allegations of sexual/racial harassment/discrimination, took one of the two unwarranted degraded marks, and made this a direct conflict between supervisor and employee with reference to Eaton "Sidestepping proper reporting" and "not getting along with supervisor" both comments directly attacking Eaton's reporting of sexual/racial discrimination/harassment to uppermanagement and Justin's response to Eaton's allegations (SDF#19, 22)(Doc. 113)

*Chauhan v. M. Alfieri, Co., Inc,* 897 F. 2d, 123, 127 (3d Cir. 1990).  Eaton must provide material and substantial evidence.

1. Material Fact- Eaton complained about discrimination in 2015 through 2017, thus engaging in a protected activity (Doc. 113 at 18-19).  Eaton was

disciplined for following the company handbook and reporting to HR, and given the lowest scores ever, after reporting on April 4th to Lance Neirby about Eaton's sexual/racial harassment/discrimination claims, and Lance Neirby changed his comments on April 5th on Eaton's evaluation to directly reflect Eaton's concerns regarding Justin[12], keeping the scores as low as they could go - all without any form of verbal, written warning or disciplinary note. In *St. Mary's Honor Ctr. v. Hicks* - 509 U.S. 502, 113 S. Ct. 2742 (1993), under the McDonald Douglas scheme, if profers that a plaintiff must introduce evidence from which a reasonable person could infer casts of doubt on the defendant's contention that there was a legitimate business justification for its actions. Eaton contends that being given a 4 for reporting to HR about his supervisor's conduct of sexual harassment/racial discrimination, which was in line with following the Employee handbook[13] were undeserved, which was supported by the fact that Justin Deacon, himself stated he and Eaton always got along (Doc. 96-21 at 29:18-25 and

[12] Regarding how Eaton had just been forced by Lance to tell Justin his concerns with Justin's comments regarding sexual/racial harassment/discrimination, causing distention between the two, which was not there prior to the meeting.

[13] Please note that this is with regards to the second '4' rating on Eaton's Performance Evaluation, which states "Sidesteps proper reporting of concerns outside management hierarchy"(Doc. 105-10 at 37; PLTF 1730)(SDF#_47_)which should not have been low, because the only time Eaton did this was when he was complaining of sexual/racial harassment as noted in Collette's Documents in 2015 (Doc. 105-7 at 56 #5; MTS 46) and Eaton's Affidavit (Doc. 103-1 at # 30,39, 40-43,53-54, 61-62) AND according to the employee handbook, he could report issues of harassment to anyone in upper management (Doc. 105-Doc. 105-8 at 6ʃ 5; MTS 168)

19:1-18; Doc. 105-9 at 3 #9; MTS 292)(SDF#48(a)) .[14] Therefore, changing

Eaton's evaluation, placing it in his permanent file (Doc. 105-8 at 14; MTS

176), and using it for laying him off all wholly constitute retaliations via

adverse actions.[15]

**AS A MATTER OF LAW, EATON'S 2017 PERFORMANCE REVIEW SCORES AND COMMENTS DO SUFFICIENTLY QUALIFY AS AN ADVERSE EMPLOYMENT ACTION LINKED TO HIS ASSERTED PROTECTED ACTIVITY, AND MONTANA SILVERSMITHS HAD NO LEGITIMATE AND VERY DISCRIMINATORY BASIS FOR GIVING THE PERFORMANCE EVALUATION**

The Court has already ruled the following:

1. Protected Activity- Per the Courts Document (Doc. 113 at 15-16) states,

   "The Plaintiff need not prove that the conduct he opposed was in fact

   unlawful under Title VII." (referencing *Moyo v. Gomez*, 40 F3d 982, 984

   (9th. Cir. 1994), but is based on "reasonable Belief" that the employer has

   engaged in an unlawful employment practice" (citing *EEOC v. Crown*

   *Zellerbach Corp.*, 720 F23d 1008, 1012 (9th Cir. 1983) and the Court also

   contended that even "An erroneous belief that an employer engaged in an

   unlawful employment practice may be actionable under Title VII, if it is

   premised on a reasonable mistake made in good faith" (citing *Sias v. City*

---

[14] (Doc 105-9 at 3 #9; MTS 292)– *Generally, how is your working relationship with Robert Eaton? A: I honestly thought he and I got along pretty well. We have a lot of stuff in common*---**********

[15] Training opportunities were cancelled and not allowed, ongoing, after the first report of sexual harassment /racial discrimination in 2015 (SDF #9-11, 27)

*Demonstration Agency,* 588 F2d 692, 685 (9th Cir. 1978). The Court further Contended that "There is no evidence that Eaton did not have a reasonable belief that sexual harassment and racial discrimination had occurred" (Doc. 113 at 16)

2. The Defendants keep repeating in all their documents (Doc. 138 at 7 ) that HR conducted an investigation in 2015; However, the Court has already ruled on this as well (Doc. 113 at 2) stating, "....she[Collette Schelhuber, HR] admittedly did not conduct an "official" internal investigation" referencing Doc. 96-19 at 6-7:19:17-21:14. In keeping with the lack of investigation, Amy Braley, ONLY ONE of the individuals Eaton was referring to in his complaints, admittedly stated that Colette never talked to her (Doc. 96-24 at 10:13-16)(SDF#26; Doc. 105-9 at 7)). AND with regards to the 2017 investigation in Eaton's grievance regarding sexual/racial harassment charges, Montana Silversmiths, again never had Amy Beckman, or any of the one's Eaton stated were being sexually harassed, called in. (SDF #26; Doc. 96-24 at 1-4)[16]

<u>**Tangible Consequences**</u>

---

[16] However, please make note that Colette never talked to any of the other individuals Eaton stated were sexually harassed, nor the individuals Eaton stated were racially discriminated against. Nor did she speak to Justin about someone complaining about sexual/racial harssment SDF #26

In reference to the employment labor law, tangible consequences are referred to as "employment action is any action causing a significant change in your employment status. This includes, but is not limited to, hiring, firing".(employment labor law.com).  Because the Layoff plan referred to in Eaton's 2017 layoff listed 5 areas that were used in the layoff (SUF #38), and the performance evaluations of 4/1/17 were listed in order as the second most weighted document to determine layoff, Then Eaton's tangible consequences were 1) downgraded marks on his performance evaluation put in permanent file, to 2) Lay Eaton off.  It should be noted that , "An adverse action is one that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

*Hoyle v. Freightliner*, LLC, 650 F3d 321, 337 (4th Cir. 2011( internal quotation marks omitted). Eaton's performance evaluation Marks were downgraded, noted to be incorrect, changed to a new performance record, which was again downgraded with new remarks which were not valid at the time of the original performance evaluation.[17]Lance was in charge of performance evaluations leading to layoff, so this was a definite pretext, showing retaliation for reporting public policy violations (Doc 105-13 at 9; MTS 1176; SDF# 36, 44-51).

---

[17] Eaton got along with Justin Deacon before Lance made Eaton confront Deacon about his sexual harassment/racial discrimination claims on April 5th, 2017 (SDF#45-46)

## STILL IN CONTROVERSY

1) No legitimate business reason to lay Eaton off, specifically.

   a) Overtime- Eaton's specific department showed excessive overtime after Defendant's laid him off, excessive throughout (SDF #117(n),

   b) AQHA was not part of the discussion as a reason for lay off until the end of the MHRB investigation, but so late into that, that it wasn't even put into any of the Defense during the Investigations (SDF #86, 98, 99)

2) Justin's performance Evaluation given by Lance Neirby, VP, stated "Select design/engraver and implement by July",(SDF #116(v)) one month after Eaton's lay off, and ongoing discussion of TRYING to hire someone to take over Eaton's position.(SDF#116(d))-Hiring Andrew directly before laying Eaton off, showing ongoing need for engravers, just hard to find and train(SDF #37), which was during the hiring freeze (NEW ATTACHMENT #4; SDF #33)

3) Justin Deacon and David Cruz both said they wanted Eaton gone during the AEM investigation that concluded on Jun e 9, 2017(SDF #71, 72).

## SUMMARY

1.  Eaton has proven that he was a qualified employee (Doc. 113 at 10; 19-20)

2.  Eaton has proven that he was in a protected class (Doc 113 at 15-16)

3.  Eaton has proven he underwent adverse actions, including downgraded performance marks, shared with at least Eaton's supervisors, and put in a permanent personnel file (Doc. 113 at 12) referencing *Leland v. City and County. of San Francisco*, 576 F. Supp. 2d 1079, 1098 (N.D. Cal. 2008) (whether performance evaluation was negative or positive was a disputed issue of material fact for the jury), and sent home after a meeting where he was forced to confront his direct supervisor of his concerns with racial/sexual harassment with no reason why or written discipline. (SDF # 54-55, 56)

4.  Eaton has proven that there was a Causal connection with the timing of his report of sexual harassment/racial discrimination and Lance changing/making a new performance evaluation/ changing comments to reflect Eaton's contentions with Justin regarding his sexual/racial discrimination, which Lance forced Eaton to bring up at the April 5th meeting (SDF #49,55,56)(Doc. 113 at 22).

5.  The lay off plans,( although vague, undated, one not given the MHRB and in past tense,) list 5 areas, which Montana Silversmiths allegedly looked at for lay off . Lance Neirby was hired and tasked with the lay, specifically

looking at 4/1/7 performance evaluations (Doc. 105-13 at 17-19)(SDF#110, 111, 133)

6. Lance presents with a pattern of behaviors[18].  Once he finds out about Eaton's sexual/racial harassment concerns, and every time they are brought up, he "punishes" or retaliates against Eaton the following day.

    a. FIRST time David Cruz told Lance Eaton had concerns with Deacon regarding sexual/racial harassment/discrimination in January, 24, 2017 THE NEXT DAY, he confronted Eaton with schedule/time changes (SDF#13,40-41, 42, 43). Eaton needed to get off early to pick up kids and they wouldn't allow it.

*Ramirez v. Dependable Highway Express, Inc.*- An employee complained about her hours being changed because it impacted his ability to take his son to dialysis.

    b. NEXT –After Lance found out about Eaton's concerns with sexual/racial harassment. Lance began weekly visits/stops beginning after June 25, 2017 to see Eaton. Eaton had a discussion with Lance stating that he would comply with the time/ schedule changes (SDF#41,42, 43). So, it appears,  Lance decided to go to Justin in order to change and lower Eaton's performance evaluation marks

---

[18] Lance was new to the company, only having been there since October, 2016(SDF#36)

because Eaton didn't quit because of the forced schedule changes.(SDF #41, 42,45).

c.  FINALLY, on April 4, 2017, Eaton was concerned about his downgraded performance evaluation and still nothing being done regarding his claims with sexual/racial harassment/discrimination. So, He went to Lance, discussed his concerns with feeling like he was being made to look violent. He again voiced his concerns about the women being sexually harassed and this not being investigated. At this point, Eaton brings up EEO and lawyer, someone to listen to Eaton regarding his sexual harassment/ racial discrimination concerns. Lance says no one is trying to make Eaton look violent, just 'unwelcoming'(Doc. 105-10 at 39-40; SUF #9Eaton's response; SDF#49, 50, 51). Lance retorts, telling Eaton he must get along or move on (Doc. 103-1 Eaton Affidavit #61), Eaton asks, "you mean quit"- thus showing Eaton they would do nothing about the claims, and are trying to force him to quit.

d.  SO, the next day (April 5th, 2017)(SDF #55), Lance, knowing Eaton is mentioning a lawsuit, brings Eaton into a room, mocks him, tries to get him to look "violent", the same word Eaton stated he was in fear of someone doing the very night before.  Lance then changes Eaton's

performance evaluation to reflect conflict with his supervisor, a
conflict that didn't exist until after Lance forced Eaton to tell Justin,
his supervisor about his issues with Justin's sexual/racial harassment/
discriminaiton .(SDF#45-48).

e.  Eaton was sent home.  The most accurate document stating this is
Collett's Memo (Doc. 105-12 at 2; SDF#55-60).  This states that
Eaton was sent home and their only reason was to "think about how
he can improve communication with Justin"- now they are trying to
say it was because of violence/threats, which were never stated before,
until they were anticipating litigation, that is.

f.  Eaton wrote a grievance, knowing he had just been retaliated against
and handed it in on April 10th, 2017(SDF#.62). At that point, Lance
wrote an email on April 13th stating Eaton was violent-again in
anticipation of litigation (SDF#130),(Eaton knew nothing about his
email) the day before Eaton left early for his work comp surgery (SDF
#70). The company completed an investigation (SDF #69, #79-80),
however, please note that Collette had to give names to AEM to
investigate how else would they know anyone's names in the
company?(SDF #80)  BUT no girls, which Eaton said were sexually
harassed were named or brought in to the AEM investigation.(Doc,

105-14 at 74; PLTF 1717). Once they knew the investigation was over, then Collette began bringing up "threats" to the company that were untrue in the June 9th email (SDF #79, 82)&(;Doc 105-12 at 11; PLTF 1164)-(which is perfect for them they thought, , because Eaton had said he was getting a lawyer, thus they were doing this in anticipation of litigation). Two employees (one being Justin Deacon) stated they wanted Eaton gone/fired during the investigation and after Eaton was forced to bring up his complaints of sexual harassment to Deacon (SDF #83)(Doc. 105-10 at 42), Deacon had said in the AEM investigation that he wanted Eaton fired (SDF #83). When Justin Deacon was asked to change anything he wanted on his AEM investigation, the one thing he did was take out parts of the investigation that stated Eaton's violence/threats.  When Eaton asked him 'why' in his deposition, Deacon surmised that they were trying to make Eaton look worse than he was (SDF #59). Once the AEM investigation was complete, they laid Eaton off just days later.(SDF #87, 88, 89, 90)(Doc. 105-12 at 18; MTS 392, 393).

g. There is no record of a loss of AQHA contract in the June 13th, 2017 email, the email that directly corresponds to the timeframe Eaton was laid off- Eaton was laid off 2 days later (SDF #87, 97)

The totality of the circumstances shows retaliation for claims brought forth by Mr. Eaton. The performance evaluation impaired Eaton's ability to be promoted at all, to receive any type of advancements (To a Master engraver, where Eaton could have been paid double), pay raises. Justin said Eaton could have done Master engraving which would have yielded higher pay. (SDF#122). There was no documentation of any flaws with Eaton's interaction with co-workers or sidestepping until Eaton's performance evaluation.  Just as in *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132, n.4. (9th Cir. 2003),

7. Eaton was cross-trained well and could have done Master buckles, the highest level of engraving, higher than any other engraver to date (SDF#22, 121-128)

8. Eaton was of good character (SDF#34, 116(g and h), #131(i))

9. Eaton had no disciplinary actions, and no verbal warnings, and had good performance evaluations scoring the highest you could get on "interaction with co-workers" in 2016 (SDF #45; Doc 105-10 at 25-26), the year before they dropped this very area to the worst level in 2017.(Doc. 113 at 5).

10. The court has already ruled that the two changes/degraded marks to Eaton's performance evaluation of 2017 degraded from 2016 performance evaluation were unwarranted (Doc. 96-23 at 22:14-18).(Doc. 113 at 19-24).

11. There was no legitimate business reason/judgment to downgrade Eaton's

performance evaluation, except to throw him into the layoff.[19](SDF #47)

Thus, according to *Crawford, 555 U.S. at 276* (Cited from Doc. 113 at 19) ("When

an employee communicated to her employer a belief that the employer has engaged

in….. A form of employment discrimination, that communcation virtually always

constitnutes the employee's opposition to the activity")- the The Court has already

agreed Eaton's raising of his concerns to Montana Silversmiths HR and VP fall

under protected activities.  Especially since Eaton had also spoke about getting a

lawyer and calling the EEO in his meeting with Lance on April 4th, 2017 (SDF

#50) and Colette on April 5th, 2017 (SDF# 55;  Doc 113 at 19). See *Reeves v.*

*Sanderson Plumbing* (2000) 530 U.S. 133, 147, 120 S.Ct. 2097 where "Proving the

employer's reason false becomes part of the greater enterpise of proving tath the

real reason was intentional discrimination". Please make judicial notice that

*Yanowitz v. L'Oreal USA, Inc.*(2005) 36 Cal.4th 1028 [32 Cal.Rptr.3d 436]

---

[19] Please note that this is with regards to the FIRST AND second '4' ratings on Eaton's Performance Evaluation, which states(1) "Sidesteps proper reporting of concerns outside management hierarchy"(Doc. 105-10 at 37; PLTF 1730)(SDF#_47_)which should not have been low, because the only time Eaton did this was when he was complaining of sexual/racial harassment as noted in Collette's Documents in 2015 (Doc. 105-7 at 56 #5; MTS 46) and Eaton's Affidavit (Doc. 103-1 at # 30,39, 40-43,53-54, 61-62) AND according to the employee handbook, he could report issues of harassment to anyone in upper management (Doc. 105-Doc. 105-8 at 6¶ 5; MTS 168) and (2)  the Second poor rating that was changed to not getting along with supervisor--Eaton got along with Deacon until the April 5 meeting,(Doc 105-9 at 3 #9; MTS 292)-  *Generally, how is your working relationship with Robert Eaton?*
   *A: I honestly thought he and I got along pretty well. We have a lot of stuff in common---*\*\*\*\*\*\*\*\*\*\*

"liberalized the test for determining what level of adverse action was sufficient to support a retaliation claim. In the process, it also stressed that real-world considerations were controlling. In particular, *Yanowitz* held that courts "need not ... decide whether each alleged retaliatory act constitutes an adverse employment action in and of itself," but instead must evaluate whether the "totality of the circumstances "of a "pattern of systematic retaliation" "is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion." (*Id.* at 1055-1056.)". Thus, in looking at the totality of the case, it shows continual retaliation of Eaton for reporting violations in public policy with ongoing degradations, ending in downgrade performance evaluations, low-balling Eaton's cross-training, and ultimately laying Eaton off when in fact, his skills uphold the constant needs and backbone of the Montana Silversmiths company. The defendants try to steer away from using the Performance evaluations as Criteria for the layoff and put more emphasis on Cross training.  The cross training Matrix was inaccurate because Justin, the supervisor to the engraving department and only one who had the expertise to fill out the Cross training matrix and update it, did not update it.  Justin said this himself in his deposition. (SDF #120-128, #22, SUF#20, 41-Eaton's direct responses) thus it was invalid.

## **CONCLUSION**

Montana Silversmiths never presented evidence on and DID NOT defend the 2nd score of 4 on the performance evaluation.[20] The Defendants did not meet their burden of proof, to show a legitimate reason for the lower marks on their evaluation.  Thus, Eaton should maintain this case as a matter of law.

Robert Eaton, PRO SE

MARCH 22, 2022

---

[20] Comment regarding "Sidesteps proper reporting concerns outside of the management hierarchy"(Doc. 105-10 at 35)

CERTIFICATE OF SERVICE

Certificate of Service

I hereby certify that on the 22nd day of MARCH , 2022, a copy of the previous document was served on the following persons by the following means:


___X___HAND DELIVERED

_____MAIL


Moultan Bellingham, PC

27 North Street, Suite 1900

P.O. Box 2559

Billings, Montana 59103-2559

Telephone: (406)248-7731

FAX: 406-248-7889


_____

ROBERT EATON, PRO SE