IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ROBERT A. EATON,<br><br>Plaintiff,<br><br>vs.<br><br>MONTANA SILVERSMITHS,<br><br>Defendant. | Case No. CV 18-65-BLG-SPW<br><br>ORDER ON MOTION TO COMPEL |

Before the Court is Plaintiff Robert A. Eaton's motion to compel the production of Defendant's Montana Silversmiths ("MTS") taxes. (Docs 183; 184). The Court denies the motion for the forgoing reasons.

I.   **Background**

Eaton originally asserted seven causes of action against MTS: (1) retaliation under Title VII; (2) wrongful termination; (3) disability discrimination; (4) age discrimination; (5) hostile work environment; (6) defamation; and (7) breach of contract (Family Medical Leave Act ("FMLA") claim). (Doc. 48). After this Court dismissed these claims and entered default judgment for MTS, Eaton appealed the dismissal to the Ninth Circuit. (Doc. 159).

The Ninth Circuit found that summary judgment was improper on two of the claims. First, dismissal of the FMLA claim was improper because this Court failed

1

to construct Eaton's pro-se pleadings liberally enough, and there were sufficient facts demonstrating Eaton was discouraged from using his FMLA leave. (Doc. 162 at 2–3). Second, the Ninth Circuit found Eaton established a prima facie case of retaliation based on the negative comments inserted into his initial 2017 performance evaluation ("PE v.1"). (*Id.* at 12). For these reasons, the Ninth Circuit reversed the dismissal of Eaton's FMLA claim and the grant of summary judgment on his retaliation claim concerning PE v.1. (*Id.* at 15).

## II. Legal Standard

The Court can compel the production of evidence within the limits of Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 26(b)(1) permits discovery of any nonprivileged matter relevant to any party's claim or defense and is proportional to the needs of the case. Evidence need not be admissible to be relevant, and thus discoverable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

## III. Discussion

Tax returns and related documents "do not enjoy an absolute privilege from discovery." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975); *Heathman v. United States Dist. Ct. for the Central Dist. of Cal.*, 503 F.2d 1032, 1035 (9th Cir. 1974). "Nevertheless, a public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium*

*Serv. Corp.*, 511 F.2d at 229; *Aliotti v. The Vessel SENORA*, 217 F.R.D. 496, 497 (N.D. Cal. 2003). Courts generally apply a two-pronged test to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns. "First, the court must find that the returns are relevant to the subject matter of the action. Second, the court must find that there is a compelling need for the returns because the information contained therein is not otherwise readily obtainable." *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 190–91 (C.D. Cal. 2006) (quoting *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D. Kan. 1997)).

Eaton moves to compel the production of taxes from MTS for two reasons. First, for calculating punitive damages, and second for "identification of financial loss [that] several ... key litigants are stating as the reason for [his] layoff." (Doc. 184 at 10). In response, MTS argues that their tax returns and financial statements are unnecessary or irrelevant to the remaining claims. (Doc. 190 at 9). First, they are unnecessary because punitive damages are not available for Eaton's FMLA claim, and under his Title VII retaliation claim, the damages are capped based on the number of employees at the company. (*Id.* at 10–11). Second, they are irrelevant because the remaining retaliation claim is based on PE v.1, and not Eaton's inclusion in MTS's reduction in force. (*Id.* at 13).

3

The Court will address whether MTS's taxes and financial returns are necessary to calculate punitive damages and then whether they are relevant to the remaining retaliation claim.

A. *Punitive Damages*

According to Eaton, his claim for punitive damages entitles him to MTS's tax returns. (Doc. 84 at 9). In response, MTS argues that Eaton's claims for punitive damages can only be based on his retaliation claim under Title VII. (Doc. 190 at 10). Further, under Title VII, there is a punitive damages cap based on the number of employees; therefore, tax information is unnecessary. (*Id.* at 11).

Eaton has two remaining claims: (1) a retaliation claim under Title VII of the Civil Rights Act and (2) a breach of contract claim under the FMLA. Punitive damages are not recoverable under the FMLA. *Farrell v. Tri-County Metro. Transp. Dist. Of Oregon*, 530 F.3d 1023, 1025 (9th Cir. 2008); *Liu v. Amway Corp.*, 347 F.3d 1125, 1133 n.6 (9th Cir. 2003). Therefore, Eaton can only recover punitive damages related to his retaliation claim under Title VII.

Under Title VII claims, there is a statutory cap on punitive damages. *See* 42 U.S.C. § 1981a(b)(3). Under the statutory cap, the amount of punitive damages is based on the defendant's number of employees. *See Arizona v. ASARO LLC*, 773 F.3d 1050, 1056–57 (9th Cir. 2014). The cap tops out at $300,000 for employers

4

with more than 500 employees. The cap drops to as low as $50,000 for employers with more than 14, but fewer than 101, employees. § 1981a(b)(3)(A).

Eaton argues that the most reliable and accurate way to discover the amount of MTS employees is via their tax returns. (Doc. 184 at 7). In response, MTS contends that the "most reliable and accurate" way to determine the number of employees is to ask the question in discovery directly. (Doc. 190 at 12–13). And Eaton has already asked the question in his "New 3rd Combined Discovery Requests." (*Id.* at 13 (see Doc. 190-3)).

There is not a compelling need for MTS's tax returns given the statutory cap on punitive damages under Title VII based on the number of employees. This Court agrees with MTS that the "most reliable and accurate" way to discover the number of MTS's employees is to ask via discovery, as Eaton has already done. In conclusion, MTS's tax returns are unnecessary to calculate punitive damages under the Title VII claim.

B. *Retaliation Claim*

Under Eaton's Title VII claim, he alleges that MTS retaliated against him by giving him an unjustified, poor performance evaluation (PE v.1) at the end of 2017 after he raised concerns about sexual harassment and racial discrimination in the

workplace. (Doc. 181). On appeal, the Ninth Circuit found that Eaton established a prima facie case that PE v.1 was retaliatory. (Doc. 162 at 13).

Eaton argues that his Title VII retaliation claim relates to whether MTS suffered a financial loss before his termination. (Doc. 184 at 9–10). Therefore, MTS's tax returns are necessary to determine whether his termination was justified. (*Id.* at 10–11). In response, MTS argues that the remaining retaliation claim is related to Eaton's PE v.1 rather than his inclusion in MTS's 2017 layoffs. (Doc. 190 at 13). Further, the Ninth Circuit found on appeal that MTS had a legitimate business reason for including Eaton in the 2017 layoffs. (*Id.* (*see* Doc. 162 at 5–6).

This Court agrees with MTS. To succeed in a retaliation claim, Eaton must demonstrate (1) that he was engaging in protected activity, (2) that he suffered an adverse employment decision, and (3) that there was a causal link between his activity and the employment decision. *Trent v. Valley Electric Ass'n, Inc.*, 41 F.3d 524, 526 (9th Cir.1994); *Folkerson v. Circus Circus Enterprises*, 107 F.3d 754, 755 (9th Cir. 1997). The relevant issue is whether MTS retaliated against Eaton by giving him a poor performance review after he engaged in protected activity. MTS having a legitimate business reason to terminate Eaton is irrelevant in determining whether PE v.1 was a retaliatory act. Therefore, MTS's tax returns are irrelevant to the Title VII retaliation claim.

## IV. Conclusion

Eaton's request to compel the production of MTS's taxes is denied. First, because MTS's taxes are unnecessary to calculate punitive damages under Title VII, and, second because the information is irrelevant to Eaton's retaliation claim.

It is HEREBY ORDERED that Eaton's motion to compel (Doc. 183) is DENIED.

DATED this 16th day of January, 2025.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge